MARY SCHMIT v. JOHN ESSER.[1]

May 15, 1931.

No. 28,375.

[1]Reported in 236 N. W. 622.

*Frankberg, Berghuis & Frankberg,* for appellant.
*Mark & Barron,* for respondent.

OLSEN, J.

Defendant appeals from an order denying his alternative motion for judgment or a new trial.

Plaintiff sued to recover damages for malpractice and recovered a verdict. One of the defenses interposed was that the cause of action was barred by the two-year statute of limitations. The case was here before on appeal from an order overruling a demurrer to the complaint and is reported in 178 Minn. 82, 226 N. W. 196. The question on the former appeal was whether the complaint on its face clearly showed that the action was barred. The former decision is the law of the case only to the extent of holding that the complaint does not show on its face that the action is barred. That does not however detract from the value of the opinion in its reasoning and statement of the law relating to the time from which the statute commences to run. On this appeal the question presented is whether under the evidence introduced the action was barred. The former decision does not preclude the defendant from raising that question on this appeal.

On March 5, 1926, plaintiff suffered a dislocation of the tibia bone of her right leg at the ankle joint and a small fracture there. She was taken to defendant's office and employed defendant, a physician and surgeon, to set, care for, and heal her injury. Defendant ex-

amined the ankle and injury, manipulated and set the dislocation and fracture, and placed the ankle and leg in a cast. Plaintiff was then taken to her home and placed in bed. Defendant did not go to the home with her.

According to plaintiff's testimony, the subsequent course of events was substantially as follows:

Her home was some five or six blocks from defendant's office. He did not come to see her. About three weeks after the injury the leg pained her very much. She sent for defendant to see what he could do to relieve the pain. He came but informed her that the cast could not be opened or removed until it had been on a month. Nothing was done. On April 5, the end of the one month, defendant came and cut open the cast and examined the injured ankle. The ankle was found slightly swollen and discolored, with a small sore covered with a scab, and the tibia bone was out of place so that its end protruded to one side at the joint. Defendant instructed the plaintiff to leave the leg in the opened cast and to remain in bed for two weeks, to bathe the foot in hot water, then to remove the cast and remain in bed for a third week, and then get up and walk. She followed the instructions given. She tried but was unable to walk at the end of the three weeks except with the aid of crutches. On July 3 she again called defendant. He came and examined the foot and watched her walk. In August she went to defendant's office, and he again examined the foot. She visited his office several times after that, but no further examination of the foot was made. She testified that on several occasions defendant said she was getting along fine; that he told her once it might take two years for complete healing; that on one occasion he suggested that it might be well to clip off the protruding portion of the bone.

The evidence we have set out is disputed by defendant in many particulars, raising issues of fact for the jury. Defendant does admit that he discovered as early as April 5 that the tibia bone was not in place, had slipped out of place at the joint, and that he knew of that condition from then on. His testimony is that he asked plaintiff to go to the hospital in the first instance and have the bones

there set by him and hospital care given; that she refused and stated she would take her chances on the setting being done in his office; that he attended her and went regularly to her home during the time from March 5 to April 5; that when he discovered on April 5 that the bone was out of place, he informed her as to the condition of the foot and told her that she would have to go to the hospital for a further operation so he could reset the bone; that he fixed April 19 as the date for her to come to the hospital and arranged with the hospital for her reception there; that plaintiff agreed to go to the hospital; that he went to the hospital to attend her at the time fixed, but she failed to come, and when he called on her to find out why she had not gone she informed him she had changed her mind; that he did not give her any treatment or advice about her foot after April 5.

Plaintiff denies that defendant at any time asked her to go to the hospital. The final result is that plaintiff has a crippled foot, with the tibia bone out of place at the ankle; that it is painful and prevents her to a large extent from doing work so as to earn a living; that she is a widow without means and has three children ranging from eight to eleven years of age.

Had the jury accepted defendant's testimony, it would be quite clear that this action, commenced June 5, 1928, was commenced more than two years after the cause of action accrued. But on plaintiff's evidence, although disputed by defendant, we conclude that it was a question of fact for the jury to determine whether the action was barred by the statute. Plaintiff's expert witness gave it as his opinion that the defect could have been remedied by efforts on the part of the defendant on July 3, 1926, or even in August of that year, and that it was defendant's duty then, as well as before that, to use proper efforts to reduce and remedy the dislocation; in other words, that defendant was negligent if he failed in July and August to remedy the bone dislocation.

From the plaintiff's testimony and the evidence as a whole, the jury could find that defendant was employed generally to treat, care for, and heal the fracture; that such employment continued

through July and August, 1926; and that he failed in his duty and was negligent in failing to apply proper treatment after his examination of the foot in July and August. Where the physician is employed generally to treat and heal an injury, he owes the duty of giving continued care and treatment. Nelson v. Farrish, 143 Minn. 368, 173 N. W. 715. If, then, the jury found that the defendant, under his general contract of employment, was negligent in failing to apply proper treatment in July and August, 1926, this action, commenced on June 5, 1928, would not be barred.

■ In the opinion on the former appeal, 178 Minn. 82, 226 N. W. 196, 197, the case of Bowers v. Santee, 99 Ohio St. 361, 124 N. E. 238, is cited with approval, wherein it was held that where the physician is employed generally to treat and effect a cure his duty continues until the relation terminates; that the treatment does not include merely the immediate and isolated resetting or reduction or adjustment of a fracture or dislocation, but all subsequent care and treatment essential to recovery. The conclusion reached by this court was stated as follows [178 Minn. 86]:

"We think the treatment and employment should be considered as a whole, and if there occurred therein malpractice the statute of limitations begins to run when the treatment ceases."

The case of Sly v. Van Lengen, 120 Misc. 420, 198 N. Y. S. 608, follows the rule stated by this court, that the statute of limitations does not commence to run until the treatment ceases.

■ Negligent failure to treat an injury at a time when the need of treatment is known to the attending physician and there is opportunity to apply proper treatment amounts to the same as negligent treatment.

■ When does the treatment cease? So long as the relation of physician and patient continues as to the particular injury or malady which he is employed to cure, and the physician continues to attend and examine the patient in relation thereto, and there is something more to be done by the physician in order to effect a cure, it cannot be said that the treatment has ceased. That does not mean that there must be a formal discharge of the physician or any for-

mal termination of his employment. If there is nothing more to be done by the physician as to the particular injury or malady which he was employed to treat or if he ceases to attend the patient therefor, the treatment ordinarily ceases without any formality.

It is the general rule that a cause of action for malpractice or other tort accrues and the statute begins to run at the time of the injury, or, as otherwise stated, at the time of the negligent or tortious act or omission. We have not overlooked the several authorities cited by defendant where, in applying that rule in malpractice cases, decisions apparently somewhat at variance with the rules stated here and by the Ohio and New York courts have been reached. But we believe the holding here and by the courts named is sound, even if not in full accord with the decisions in other states.

■ The question of whether the action was barred being a question of fact for the jury, we reach the inquiry as to whether there were reversible errors in the rulings on evidence or in the charge of the court.

The court in its charge instructed the jury:

"It is the contention of the defendant that the relation of physician and patient between the defendant and the plaintiff * * * was terminated and at an end more than two years before this action was commenced."

The court further charged that if the jury found as a fact that the relation of physician and patient between the parties terminated on or prior to June 3, 1926, then they should find a verdict for defendant. On the other hand, if the jury found as a fact that such relation did not terminate until after June 3, 1926, then the action was commenced within the two-year period permitted by the statute. The jury was given no information as to what would terminate the relation. We think it was prejudicial error so to charge. Termination of treatment does not necessarily depend on the termination of the relation of physician and patient. Treatment of a particular ailment or injury might readily terminate and the relation of physician and patient continue. The test applied was not the test stated

in our former decision in this case. The jury might conclude that the relation of physician and patient continued until and unless there was a discharge of the physician or some word or act on his part clearly showing a termination, although treatment of the injury might have terminated long before.

There was no exception to the charge at the time, but this rule, given the jury several times, was a clear statement of a rule of law controlling on that issue. It was assigned as error in the motion for a new trial and is properly presented here.

There were some exceptions taken to statements of plaintiff's counsel in his argument to the jury. Some were objectionable. It does not appear that the trial court was asked to take any action thereon or made any definite rulings. The objectionable statements are not likely to occur on a new trial.

Dr. Hall, plaintiff's witness, was permitted to testify as to what stand or action certain medical associations had taken in reference to the right of a physician to go into court and testify in a negligence or malpractice case. At least as coming from plaintiff's own witness, it was error to go into that question. Another witness was permitted, over objection, to give testimony on the same subject. This also was error.

Questions to Dr. Hall and one other witness as to what the witness would do and as to what kind of a cast he would use in treating the plaintiff, not based on any other foundation, should not have been permitted to be answered.

Dr. Hall was also permitted over objection to give his opinion as to whether defendant's treatment of plaintiff was a continuing treatment, continuing after June 5, 1926. It was not a subject for a medical opinion and should have been excluded.

One witness was permitted, over objection, to testify as to degrees of negligence, to state that certain facts, assumed to be true on plaintiff's evidence, showed that defendant was highly negligent, very negligent, in his treatment.

In view of the evidence in the case, these several errors require a new trial.

Defendant's requests to charge, numbered I and VI, appear correct and might well have been given, but in view of the general charge as given we do not find their refusal reversible error.

Order reversed.