# RONALD THOMAS MURRAY v. LeROY J. FOX.

220 N. W. 2d 356.

July 12, 1974—No. 44288.

*Rischmiller & Wasche* and *Robert Wm. Rischmiller,* for appellant.

*Altman, Geraghty, Mulally & Weiss* and *James W. Kenney,* for respondent.

Heard before Peterson, Todd, and Scott, JJ., and considered and decided by the court.

PETERSON, JUSTICE.

Ronald Thomas Murray instituted this medical malpractice action against Dr. LeRoy J. Fox by service of the summons and complaint on January 18, 1972, claiming that surgery performed upon him by defendant on May 15, 1969, was negligently performed and was not reasonably necessary. The trial court, at the conclusion of the testimony, granted defendant's motion for a directed verdict and dismissal of plaintiff's action on the ground that the applicable statute of limitations had run. The only issue raised by plaintiff's appeal is whether the trial court correctly ruled that plaintiff's action was barred by the statute of limitations.

Plaintiff's medical problems began in late April 1969. Plain-

tiff, a man of 41 at the time of trial, had been employed for a number of years by a battery plant in St. Paul. While working on April 29, 1969, plaintiff lifted several heavy batteries and dropped one of them. Complaining of back pain, he went to see the plant nurse and was sent by her to see the plant physician, Dr. William H. Hollinshead. Hollinshead gave plaintiff a prescription for pain medication and referred him to a physician specializing in orthopedics, Dr. Donald R. Lannin.

However, plaintiff did not see Dr. Lannin immediately. Instead, on May 6, 1969, he first saw defendant Fox, a surgeon who had been the family physician for other members of plaintiff's family. Three days later, on May 9, plaintiff again saw Dr. Fox for his back pain. At this time he was advised that he would probably require back surgery and should be admitted to the hospital, where additional X-rays would determine the need for surgery.

Several days later, on May 13, plaintiff went to Dr. Lannin's office for an examination. After examining plaintiff and learning of the scheduled hospitalization and probable surgery, Dr. Lannin very clearly advised plaintiff of his opinion that plaintiff did not need surgery. Instead, Dr. Lannin advised in favor of conservative care. Nevertheless, plaintiff checked into St. Joseph's Hospital that very evening. Having obtained further radiological studies, Dr. Fox was still in favor of surgery, and on May 15 he performed a lumbar laminectomy on plaintiff.

After the surgery, plaintiff was seen daily at the hospital by defendant Fox until being discharged on May 22. Plaintiff thereafter kept appointments with Fox on June 10 and June 24, 1969, but did not return for a third scheduled visit. In Dr. Fox's opinion, treatment of plaintiff's back ended at this point.

On the date on which this action was instituted, more than 2 years had elapsed since the period of May to June 1969, during which plaintiff's surgery and post-operative care took place. The applicable statute of limitations, Minn. St. 541.07, provides a 2-

year limitation in malpractice actions. In pertinent part, it reads as follows:

"Except where the uniform commercial code otherwise prescribes, the following actions shall be commenced within two years:

"(1) For libel, slander, assault, battery, false imprisonment, or other tort, resulting in personal injury, and all actions against physicians, surgeons, dentists, hospitals, sanatoriums, for malpractice, error, mistake or failure to cure, whether based on contract or tort * * *."

In dismissing the action, the trial court held that the limitation period expired on June 24, 1971, at the latest. The court reasoned that because the heart of the complaint was malpractice or negligence in connection with the surgery, the statute began to run on the date of the surgery, May 15, 1969, or at most on the date of the last post-surgical visit, June 24, 1969. The trial court thus held that the action was instituted some 6 months after the statute had run.

The principal thrust of plaintiff's case at trial was that the surgery should not have been performed at all. Since there was little if any evidence of negligence in the course of performing the surgery or providing the post-operative care, the essence of plaintiff's case was that defendant was negligent in deciding upon and undertaking the surgery. If that was so, the event of malpractice irrevocably occurred on May 15, 1969, and nothing thereafter could have cured it. In this sense, the present case is fully analogous to the situation present in Swang v. Hauser, 288 Minn. 306, 180 N. W. 2d 187 (1970), and is controlled by our holding there.

Swang was an action alleging negligence on the part of two physicians, and technical assault and battery by one of them as well, in connection with pin-installation surgery by Dr. Hauser on plaintiff's hip. The court held that there was no evidence to support the negligence claim. It further held that the action for

technical assault and battery, based primarily upon claims that plaintiff had never been informed of her transfer back from Dr. Chatterton to Dr. Hauser and that she had been led to believe that Dr. Chatterton would perform prosthesis surgery, was barred by the 2-year statute of limitations.

In Swang the court noted the usual rule that in malpractice actions the statute of limitations does not begin to run until treatment terminates. See Schmit v. Esser, 178 Minn. 82, 226 N. W. 196 (1929); Id. 183 Minn. 354, 236 N. W. 622, 74 A. L. R. 1312 (1931). However, we held that the plaintiff's action fell outside the Schmit rule and enunciated instead a different approach for a particular category of cases. We explained our ruling that the statute began to run on the date of surgery on the following basis (288 Minn. 309, 180 N. W. 2d 190):

"* * * The alleged tort was a single act of surgery on April 7, 1964; that is, it was complete at that precise time, for no continued course of treatment could either cure or relieve it. And, notwithstanding plaintiff's allegation that defendants failed to communicate with her as to her medical status (cf. Schmucking v. Mayo, 183 Minn. 37, 235 N. W. 633), the evidence clearly establishes that she was actually aware of the facts upon which that claim is based at least by mid-May 1964, more than 2 years before the commencement of her action against either defendant. The fact that the physician-patient relationship with defendant Hauser continued for a few months into the 2-year statutory period would not, therefore, avoid the statutory bar as to that action."

Whatever distinctions might be drawn between Swang and the instant case are largely without significance. The gist of the present plaintiff's case was that defendant was negligent in deciding upon and undertaking the surgery. This single act of surgery was complete on May 15, 1969, and like the alleged battery in Swang, could not be subsequently undone or cured. Yet if there was negligence in the decision to undertake surgery rather than

conservative care, plaintiff was clearly aware of an expert medical opinion against surgery before he entered the hospital. As we discuss in greater detail below, the allegations of fraudulent concealment were as unfounded in this case as in Swang. In each case plaintiff was aware of the facts upon which the claim was ultimately based more than 2 years before the action was commenced.

Considerably before the 2-year limitation expired, then, plaintiff was cognizant of the facts and theories giving rise to his claim. In Swang, we identified two rationales underlying the rule that the statute begins to run when treatment terminates: the practical difficulty in determining the precise time of the act or acts of treatment and the policy consideration of the need for confidence in the physician during a course of treatment. Under the circumstances of the present case—a single act of surgery complete on May 15 and an allegation of negligence in the decision to undertake that surgery—neither of these reasons is called into play.

Moreover, plaintiff only secondarily pressed any claim of negligence in the performance of the surgery or in the post-operative care. It is only in this context that he would be able to argue that the traditional course of treatment rule for the running of the statute of limitations should apply. See, Schmit v. Esser, *supra;* Johnson v. Winthrop Lab. Div. of Sterling Drug, Inc. 291 Minn. 145, 190 N. W. 2d 77 (1971). Yet the evidence of any malpractice in these respects was negligible. Nor can we conclude that the trial court erred in finding as a matter of law that treatment terminated on June 24, 1969, at the latest.

After his discharge from the hospital, plaintiff kept appointments with defendant Fox on June 10 and June 24, 1969, but failed to return for a third scheduled appointment. Defendant considered that the treatment of plaintiff's back ceased on June 24. We believe that the evidence would not support a finding to the contrary.

There was some dispute in the testimony regarding both the

date and the purpose of plaintiff's next appointment with defendant after June 1969. Although plaintiff initially testified that he had an appointment with defendant Fox in June 1970, during the course of which he was given a prescription for a pain reliever for his back, on cross-examination he retracted his own testimony. Rather, plaintiff apparently next saw defendant on August 21, 1970. Fox testified that there was no mention of back pain at this time and that the complaint for which plaintiff sought medical help was a hernia. Plaintiff underwent hernia surgery several days later and was seen postoperatively for the hernia by defendant on three occasions in September and October 1970.

Plaintiff did not see Dr. Fox again until April 30, 1971. At this visit plaintiff appeared with his lawyer and discussed matters relating to his workmen's compensation claims. At some point during this visit plaintiff may have mentioned that he was experiencing back pain. Plaintiff last saw defendant on May 25, 1971. Although plaintiff testified that Dr. Fox advised him to employ bed rest and hot packs for the pain, Fox did not remember giving any such advice.

In August 1971 plaintiff saw another orthopedic specialist and employed the services of this specialist and another physician thereafter. Plaintiff had an appointment to see Dr. Fox in November 1971. However, as he admitted, he did not keep that appointment because he had been informed by Fox's office that he would be expected to pay for the visit and because he owed Fox about $900.

We find this erratic history of plaintiff's subsequent contacts with Dr. Fox unconvincing on the point at issue. We conclude that there is nothing in the facts to warrant reversal of the trial court's finding that treatment of plaintiff's back ceased on June 24, 1969, at the latest.

In a final effort to avoid the bar imposed by the statute of limitations under either of the approaches previously discussed, plaintiff advances an argument of fraudulent concealment. In

limited circumstances, a physician's fraud in concealing a patient's cause of action may toll the running of the statute. In Schmucking v. Mayo, 183 Minn. 37, 235 N. W. 633 (1931), we held that if a doctor prevents a patient from discovering a cause of action by fraudulent concealment, the statute of limitations will be tolled until the patient discovers, or with reasonable diligence should have discovered, the cause of action. Under this doctrine, however, mere ignorance of the cause of action, in the absence of fraud, is not sufficient to toll the statute. Schmucking v. Mayo, *supra;* see, also, Johnson v. Winthrop Lab. Div. of Sterling Drug, Inc. *supra.*

In the present case, plaintiff has attempted to invoke the holding of Schmucking v. Mayo, *supra.* However, we find this attempt ill conceived. While mere ignorance of the cause of action will not toll the running of the statute, plaintiff cannot very well even plead ignorance. The thrust of plaintiff's case at trial was the theory that defendant was negligent in performing unnecessary surgery and not informing plaintiff of alternatives to it. Yet, before entering the hospital, plaintiff had obtained another medical opinion advising him of an alternative approach. Plaintiff's own testimony to this effect confirmed that he was not ignorant of contrary medical opinion and thus he could not justifiably claim reliance solely on the opinion of defendant. Moreover, virtually no evidence was presented from which the jury could have concluded that defendant knew that his representations of the advisability of surgery were false or that he made such representations in reckless disregard of their truth or falsity. The trial court was warranted in its implicit finding that there was no evidence raising a factual question of fraudulent concealment.

In sum, we find none of the arguments advanced by plaintiff meritorious. We conclude that the trial court properly dismissed the action on the ground that it was barred by the statute of limitations.

Affirmed.

380

YETKA, JUSTICE (concurring specially).

I concur in the majority decision. However, I would hold that the 2-year statute does not commence to run until treatment following the surgery ends. I would thus affirm the finding of the trial court in this case that the statute commenced to run on June 24, 1969, when plaintiff last saw the defendant and was treated by him.

To hold that the malpractice irrevocably occurred on May 15, 1969, the date of the surgery, could result in an interpretation of the majority holding to mean that if a patient was operated on surgically and was treated by that same physician thereafter for 2 years, the patient would be barred after expiration of 2 years from the date of surgery from bringing a malpractice suit even though he had not seen another physician or been aware of the possibility of such a claim. I do not adhere to such a holding, and I do not interpret the majority opinion as intending that conclusion. In this case, plaintiff knew of the facts upon which the claim was based in advance of June 24, 1969, and had had the consulting opinions of other doctors, and thus cannot argue that he could not arrive at a decision that malpractice occurred until all treatment had ceased. This case thus falls within the exceptions to the general rule that the statute commences to run after conclusion of treatment.