June A. GRONDAHL, Appellant,

v.

Matthew H. BULLUCK, M.D., and The Duluth Clinic, Ltd., Respondents.

No. 81–479.

Supreme Court of Minnesota.

April 23, 1982.

Alfred J. Weinberg, Duluth, for appellant.

Halverson, Watters, Bye, Downs & Maki and Teresa B. Bonner, Duluth, for respondents.

WAHL, Justice.

Plaintiff June A. Grondahl appeals from an order of the St. Louis County District Court granting summary judgment and dismissing her complaint of medical malpractice against defendants Dr. Matthew H. Bulluck and The Duluth Clinic, Ltd. The district court found Mrs. Grondahl's action barred by the statute of limitations. The only question is whether there exists a genuine issue of material fact concerning the date on which Dr. Bulluck's treatment of Mrs. Grondahl ceased. We conclude that there does and, therefore, reverse and remand for further proceedings.

Plaintiff presented the following facts in her pleadings, answers to interrogatories, medical charts and affidavits. In August 1971, June Grondahl, then 51 years of age, suffered from imbalance, dizziness and hearing problems and was hospitalized by her family physician, Dr. William E. Jacott. During this hospitalization, Dr. Matthew H. Bulluck, a member of The Duluth Clinic, consulted with Dr. Jacott and had the following tests conducted: spinal tap, brain wave, brain scan and arteriogram in the neck. Dr. Bulluck informed Mrs. Grondahl on August 14, 1971, that she suffered from demyelinating disease (multiple sclerosis).[1]

---

1. Multiple sclerosis is "[a] disease of the brain and spinal cord * * * [which] is slow in progress but incurable." 2 J. E. Schmidt, *Attorneys' Dictionary of Medicine* M–124 (1981).

On February 18, 1975, Dr. Bulluck completed a workmen's compensation application for registration of physical impairment which stated that he had seen Mrs. Grondahl in August 1971 in consultation with Dr. Jacott and that the diagnosis was demyelinating disease.

After the initial diagnosis Mrs. Grondahl's symptoms periodically worsened, and she was hospitalized for treatment of multiple sclerosis on Dr. Bulluck's advice in November 1971, August 1972, and in 1973. Each of these hospitalizations lasted approximately 10 days and resulted in Mrs. Grondahl's absence from work for 5 weeks.

On April 15, 1975, Dr. Bulluck examined Mrs. Grondahl while she was hospitalized because of injuries sustained in a fall. He had several tests conducted, including a lumbar puncture, and treated her for migraine headaches and visual problems by prescribing Dilantin. On September 30, 1975, Mrs. Grondahl made an office call on Dr. Bulluck. He took her off the Dilantin but prescribed no other medication. At no time during this visit did Dr. Bulluck state that he was ceasing his treatment of Mrs. Grondahl's multiple sclerosis. After that office visit Mrs. Grondahl continued to consult Dr. Bulluck by telephone during 1976. Her symptoms persisted and worsened. On or about February 5, 1977, she called Dr. Bulluck to complain about a balance problem and was told, she says, to forget her problem and it would go away.

During the last week of June 1977, Mrs. Grondahl called The Duluth Clinic asking for Dr. Bulluck. She was informed that he was no longer there and that Dr. Richard E. Freeman was available to see Dr. Bulluck's patients. Dr. Freeman examined Mrs. Grondahl on July 7, 1977, and from the outset considered the diagnosis of multiple sclerosis suspect. On October 18, 1977, Mrs. Grondahl insisted on knowing if she had multiple sclerosis. Dr. Freeman reported that, in his opinion, she did not. Since July 1977 Mrs. Grondahl has been treated by Dr. Freeman and Dr. Richard L. Dobbs, with noted improvement, for pressure in the inner and lower ear and malfunctioning of her balance systems.

Dr. Bulluck, in answers to interrogatories and by affidavits, stated that he first saw Mrs. Grondahl in consultation with Dr. Jacott in February 1971 and performed tests at that time. He again saw her in consultation with Dr. Jacott on December 1971 but claims no further contact until she was hospitalized again in April 1975, when he performed tests and examinations. He last reports an office visit on September 30, 1975, when he entered on Mrs. Grondahl's medical chart: "Patient is in wondering if there is anything we can try. The Dilantin did nothing. I know of nothing and told her so." Dr. Bulluck did not deny having telephone conversations with Mrs. Grondahl after the September 30, 1975, office visit but stated that he "did not see Plaintiff, nor was he requested by the Plaintiff or another to see Plaintiff, at any time after September 30, 1975."

Mrs. Grondahl commenced this medical malpractice suit against Dr. Bulluck and The Duluth Clinic by service of summons and complaint on the Clinic on January 8, 1979, and on Dr. Bulluck on January 20, 1979. Defendants moved for summary judgment on the ground that the suit was barred by the statute of limitations.

■■ A motion for summary judgment may be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03; *Gaspord v. Washington County Planning Commission*, 312 Minn. 591, 252 N.W.2d 590 (1977). The district court must view the evidence in the light most favorable to the nonmoving party, *Vieths v. Thorp Finance Co.*, 305 Minn. 522, 525, 232 N.W.2d 776, 778 (1975) (*per curiam*), and this court on appeal must view the evidence most favorably to the one against whom the motion was granted. *Abdallah, Inc. v. Martin*, 242 Minn. 416, 65 N.W.2d 641 (1954).

■ An action for medical malpractice is barred if not commenced within 2 years of the date on which the cause of action accrued. Minn.Stat. §§ 541.01, 541.07(1)

(1980). The cause of action accrues when the physician's treatment for the particular condition ceases. *Johnson v. Winthrop Laboratories Division of Sterling Drug, Inc.,* 291 Minn. 145, 190 N.W.2d 77 (1971); *Schmit v. Esser,* 183 Minn. 354, 236 N.W. 622 (1931). Where there are disputed questions of material fact as to whether a plaintiff is barred by the statute of limitations, these questions are to be decided by a jury. *Schmit v. Esser,* 183 Minn. at 357, 236 N.W. at 624; see *Sheets v. Burman,* 322 F.2d 277, 278 (5th Cir. 1963).

█ Did Mrs. Grondahl present evidence to raise a genuine issue of material fact as to when Dr. Bulluck's treatment ceased? *Schmit* articulates three factors to be considered in determining when treatment ceases: (1) whether there is a relationship between physician and patient with regard to the illness; (2) whether the physician is attending and examining the patient; and (3) whether there is something more to be done.[2] 183 Minn. at 358–59, 236 N.W. at 625.

█ The first two factors are closely related. In *Johnson* we considered treatment to have ceased after a final telephone consultation between the physician and the patient when the dermatologist specifically returned the patient to her family physician. Prior to that final telephone consultation the physician-patient relationship was sustained, and the physician attended and examined the patient by telephone consultations and office visits. 291 Minn. at 147–48, 190 N.W.2d at 79. In *Miller v. Wells,* 58 A.D.2d 954, 397 N.Y.S.2d 183 (1977), where the applicable statute of limitations was 3 years, the patient commenced suit on July 30, 1973, more than 3 years after her last office visit on April 13, 1970, but less than 3 years from the date of a purported telephone consultation in August 1970. The telephone consultation was the last episode in the relationship between the physician and the patient until commencement of the patient's suit. The *Miller* court affirmed the trial court's denial of summary judgment against the patient because "there [was] a jury question as to whether the course of treatment continued past July, 1970." *Id.* at 954, 397 N.Y.S.2d at 184. *Johnson* and *Miller* indicate that telephone consultations may constitute proof of a continuing physician-patient relationship and evidence that the physician is attending and examining the patient.

█ The third factor outlined in *Schmit,* the determination of whether there is more to be done by the physician, is an element in deciding when treatment ceased and also goes to the question of whether there was negligence by the physician. Such a determination requires expert medical testimony at trial. In *Schmit,* we noted that plaintiff's medical expert testified that the physician could have offered treatment to the plaintiff as late as July or August, that there was something more that could be done.

Had the jury accepted defendant's testimony, it would be quite clear that this action, commenced June 5, 1928, was commenced more than two years after the cause of action accrued. But on plaintiff's evidence, although disputed by defendant, we conclude that it was a question of fact for the jury to determine whether the action was barred by the statute. Plaintiff's expert witness gave it as his opinion that the defect could have been remedied by efforts on the part of the defendant on July 3, 1926, or even in August of that year, and that it was defendant's duty then, as well as

2. The language in *Schmit* provides:
    So long as the relation of a physician and patient continues as to the particular injury or malady which he is employed to cure, and the physician continues to attend and examine the patient in relation thereto, and there is something more to be done by the physician in order to effect a cure, it cannot be said that the treatment has ceased. * * * If there is nothing more to be done by the physician as to the particular injury or malady which he was employed to treat or if he ceases to attend the patient therefor, the treatment ordinarily ceases without any formality.
    *Schmit v. Esser,* 183 Minn. 354, 358–59, 236 N.W. 622, 625 (1931).

before that, to have used proper efforts to reduce and remedy the dislocation; in other words, that defendant was negligent if he failed in July and August to remedy the bone dislocation.

183 Minn. at 357, 236 N.W. at 624. Whether something more could be done for Mrs. Grondahl, who continually suffered from symptoms requiring treatment, is a question to be evaluated in light of expert medical testimony.

▬ In this case, the district court totally credited Dr. Bulluck's evidence as presented by the medical charts, answers to interrogatories and affidavits, and totally discredited Mrs. Grondahl's claim to have been in telephone consultation with Dr. Bulluck after the September 30, 1975, office visit. We find this to be error. When Dr. Bulluck's treatment of Mrs. Grondahl ceased was a genuine issue of material fact which should have been decided by the jury. The jury might reasonably conclude, on Mrs. Grondahl's evidence, that Dr. Bulluck began treating her regarding her imbalance, dizziness and hearing problems in February 1971 and did not cease treating her until the February 5, 1977, telephone conversation, thus bringing the suit within the applicable statute of limitations. On the other hand, after the evidence is in, a directed verdict might properly be granted.

> [A] denial of summary judgment in no way rules out the possibility of a subsequent directed verdict. As Judge Brown pointed out in *Robbins v. Milner Enterprises, Inc.* [278 F.2d 492, 496–497], "[This] is a recognition that at times the issues may be such that only after the agony of a full-blown trial may it authoritatively be determined that there was never really the decisive issues of fact at all."

6 J. Moore, W. Taggert & J. Wicker, Federal Practice, § 56.04(2) (2d ed. 1981); *accord, Sheets v. Burman,* 322 F.2d at 281.

We recognize that in *Murray v. Fox,* 300 Minn. 373, 220 N.W.2d 356 (1974), we denied a plaintiff's claim that treatment had continued during a conversation in the physician's office which would have prevented a bar of the statute of limitations. We classified the patient's subsequent contacts with the physician as "erratic." 300 Minn. at 378, 220 N.W.2d at 359. We note, however, that plaintiff was appealing from an order granting a directed verdict after having had the opportunity to present evidence to the court. Murray was not restricted to the limited forms of pre-trial mechanisms such as affidavits and interrogatories available on summary judgment as was Mrs. Grondahl.

The liability of The Duluth Clinic is predicated on the liability, if any, of Dr. Bulluck. If the jury were to find the claims against Dr. Bulluck to be barred by the statute of limitations, the claims against The Duluth Clinic arising from Dr. Bulluck's treatment would also be barred.

Reversed and remanded for proceedings consistent with this opinion.

KELLEY, J., took no part in the consideration or decision of this case.