Julie L. Obinger MILLER, Appellant,

v.

MERCY MEDICAL CENTER, a DIVISION OF HEALTH CENTRAL, INC., Respondent,

Mark H. Brakke, M.D., et al., Defendants,

R.L. Baron, M.D., Respondent.

No. C6-85-1110.

Court of Appeals of Minnesota.

Jan. 21, 1986.

Review Denied March 21, 1986.

David P. Pearson, St. Paul, for Julie L. Obinger MILLER.

John M. Degnan, Minneapolis, for Mercy Medical Center, a Division of Health Central, Inc.

Robert M. Mahoney, St. Paul, for R.L. Baron, M.D.

Heard, considered and decided by the court en banc, consisting of PARKER, WOZNIAK, SEDGWICK, LESLIE, NIERENGARTEN, and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Julie Obinger Miller appeals the trial court's grant of respondents Dr. Baron's and Mercy Medical Center's summary judgment motion and dismissal of her claim as being barred by Minnesota's two-year statute of limitations on medical malpractice claims. Minn.Stat. § 541.07(1) (1984).

The parties dispute when the statute of limitations began to run. Appellant claims it began to run on or after November 5, 1977, the date she learned she had fractured her spine; respondents argue the statute began to run August 13, 1977, the date of appellant's only visit with Dr. Baron. The trial court ruled that, as a matter of law, the patient-doctor relationship between appellant and respondent terminated August 13, 1977, therefore her suit, filed November 5, 1979, is barred by Minn.Stat. § 541.07(1).

## FACTS

Appellant was injured August 12, 1977, in a single-car rollover accident. Unconscious at the scene, she was taken by ambulance to the emergency room at Mercy Medical Center.

Appellant was first treated by Dr. Rodman, affiliated with Coon Rapids Medical Clinic, and the emergency room physician on duty that evening. Appellant complained of pain and numbness in her neck and back, as well as pain in her foot and in her collarbone. Dr. Rodman x-rayed appellant's cervical spine and diagnosed cervical strain, whiplash. Both Dr. Rodman and the radiologist read the x-ray as negative for fracture. Dr. Rodman prescribed a cervical collar and pain medication. Appellant states that Dr. Rodman told her to see him at the Coon Rapids Clinic in a week. Appellant was not admitted to the hospital and returned home that evening.

Appellant experienced significant discomfort that evening. The next day Rhonda Erickson, appellant's roommate, and Ray Miller, then appellant's fiancee and now her

husband, helped appellant walk into her bedroom and they supported her back and head to ease her into a reclining position. As they were lowering her, her neck collapsed, her head snapped backward, and an audible cracking sound emanated from her upper back-neck region. She lost her breath and experienced great pain in her upper back and neck.

Erickson called the Mercy emergency room and described the incident to the doctor. She was instructed to bring appellant in for an examination.

Appellant was seen by respondent, Dr. R.L. Baron, who manually examined appellant's back. At that time, respondent was associated with the Emergency Professional Physicians Association (EPPA), an organization that staffs emergency rooms for some area hospitals. He was not otherwise in private practice. Respondent took no x-rays and conducted no additional tests. He diagnosed appellant's condition as a cervical muscle spasm. He instructed her to go home and relax, continue wearing the neck brace, take the medication Dr. Rodman had prescribed, and "quit acting like a baby." Appellant returned home following the examination.

Respondent did not see appellant again after August 13, 1977, nor did appellant consult with any other doctor until two months after the accident.

Someone, the parties are in dispute as to the person's identity, called Coon Rapids Clinic after the accident and ordered a refill of appellant's pain medication prescription.

Appellant returned to her job as a receptionist-secretary at the end of August, 1977. She continued to wear the cervical collar. Her condition worsened, she suffered frequent headaches, and was unable to completely control her bodily functions.

On November 4, 1977, appellant saw Dr. James J. Abler, an Anoka chiropractor. Dr. Abler took x-rays and notified appellant on November 5, 1977, that the x-rays showed a fracture of her odontoid process, a bony portion of the second cervical vertebra. He advised her to go immediately to the hospital.

Appellant returned to Mercy Medical Center. She was examined by Dr. Stephen Martin, an independent physician not affiliated with any of the other physicians involved in this action. Dr. Martin confirmed the fracture and recommended immediate surgery. On November 7, 1977, he performed a fusion of appellant's first three cervical vertebrae. Appellant was hospitalized for eleven days and wore a head to waist metal brace for three months.

Appellant continues to suffer pain in her neck and upper back and experiences numbness in her hands and feet as a result of her injury.

Sometime in January, 1978, she hired an attorney, who no longer represents her, to pursue a medical malpractice claim against Dr. Baron for negligent examination, misdiagnosis, and treatment. The attorney never filed suit. Present counsel commenced this action November 5, 1979, against Mercy Medical Center and each of the physicians who treated appellant. All were dismissed from the suit except Mercy and Dr. Baron.

On May 11, 1981, the court denied both respondent's motion and appellant's cross-motion for summary judgment. Trial was set for March 18, 1985. The court agreed to hear the case on a narrow set of stipulated facts, apparently to save appellant the expense of numerous expert witnesses.

Prior to trial, respondents renewed their motion for summary judgment claiming the statute of limitations barred appellant's claim. The court granted respondent's motion, finding no continuing course of treatment after August 13, 1977, and finding that respondent's care, as a matter of law, terminated more than two years prior to appellant's filing her suit. This appeal is from the judgment entered March 29, 1985.

## ISSUES

1. Did the trial court err in granting respondent's summary judgment motion?

2. Should this court adopt the "discovery rule" for medical malpractice cases?

## I.

### Statute of Limitations

The parties have stipulated to the facts. The sole issue before this court is when Dr. Baron's treatment of appellant terminated and when the statute of limitations began to run.

Appellant claims that she relied on respondent's diagnosis of cervical strain and that her reliance on his diagnosis constituted a continuing course of treatment. She argues that this continuing course of treatment did not terminate until November 5, 1977, the day she learned that her spine was fractured. Thus, she argues, the statute of limitations did not begin to run until November 5, 1977.

Respondent claims his treatment of appellant was a single act and terminated at the completion of that treatment on August 13, 1977.

Summary judgment is properly granted where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact "and that either party is entitled to a judgment as a matter of law." Minn.R.Civ. P. 56.03. On appeal this court must view the evidence in the light most favorable to the party against whom the motion is granted. *Abdallah, Inc. v. Martin,* 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954); *Hawkinson v. Geyer,* 352 N.W.2d 784, 788 (Minn.Ct.App. 1984).

Minnesota's statute of limitations for medical malpractice claims is two years. Minn.Stat. § 541.07(1) (1984). The cause of action accrues when the physician's treatment of the patient terminates. *Johnson v. Winthrop Laboratories Division of Sterling Drug, Inc.,* 291 Minn. 145, 190 N.W.2d 77 (1971); *Schmit v. Esser,* 183 Minn. 354, 358, 236 N.W. 622, 625 (1931).

*Schmit v. Esser* states the standard for determining when treatment terminates:

So long as the relation of physician and patient continues as to the particular injury or malady which he is employed to cure, and the physician continues to attend and examine the patient in relation thereto, and there is something more to be done by the physician in order to effect a cure, it cannot be said that the treatment has ceased.

*Schmit,* 183 Minn. at 358, 236 N.W.2d at 625. *See also Grondahl v. Bulluck,* 318 N.W.2d 240, 243 (Minn.1982); *Giles v. Sanford Memorial Hospital and Nursing Home,* 371 N.W.2d 635, 637 (Minn.Ct.App. 1985).

Here we must examine the pleadings, depositions, and stipulated facts on file to determine when Dr. Baron's treatment of appellant terminated and whether the trial court properly determined that respondent was entitled to summary judgment as a matter of law, Minn.R.Civ.P. 56.03, in light of the *Schmit* requirements. *Cf. Noland v. Freeman,* 344 N.W.2d 419 (Minn.1984) (when treatment terminates is an issue of fact to be decided by the jury).

The following facts, stipulated to by all of the parties, indicate that following appellant's injury she was examined by Dr. Rodman at Mercy on August 12, 1977. After she experienced the snap in her neck, accompanying pain, and shortness of breath on August 13, 1977, she returned to the Mercy emergency room and was seen by Dr. Baron. He took no x-rays and diagnosed cervical muscle spasm. He had no further contact with appellant.

In both of her depositions, appellant stated that she never intended to return to Mercy or to see any other doctor after August 13, 1977. On August 16, 1977, someone phoned Coon Rapids Clinic for a refill of the medication prescribed by Dr. Rodman. Appellant did not make the follow-up visit to Coon Rapids Clinic recommended by Dr. Rodman.

On November 4, 1977, appellant saw Dr. Abler, a chiropractor, who took x-rays of appellant's neck and back. On November 5, 1977, Dr. Abler informed appellant that her x-rays revealed a fracture. He in-

structed appellant to go immediately to Mercy's emergency room where Dr. Martin confirmed Dr. Abler's diagnosis. Dr. Martin performed surgery on appellant on November 7, 1977.

■ Even viewing the stipulated facts in the light most favorable to appellant, we conclude, as a matter of law, that the trial court did not err in finding that Dr. Baron's treatment of appellant terminated on August 13, 1977, and that Dr. Baron's treatment of appellant was limited to a single visit. The parties agree that they neither intended to see each other again nor actually saw each other again. It is clear from the facts that appellant did not consider herself a patient of Dr. Baron. We cannot imply a continuing relationship based on appellant's claim that she relied on Dr. Baron's diagnosis. The fact that appellant sought the services of another physician was sufficient, by itself, for the trial court to conclude that no continuing course of treatment existed. *See Schmit,* 183 Minn. at 358, 236 N.W. at 625. The fact that when appellant needed medication either she or someone at her direction contacted Dr. Rodman's clinic, and not Dr. Baron, erodes her argument that she relied on Dr. Baron for treatment. Finally, although there appears that more may have remained to be done, appellant did not seek the services of Dr. Baron for that additional treatment, but instead sought the services of a chiropractor, Dr. Abler.

■ The trial court correctly concluded that Dr. Baron's treatment of appellant terminated on August 13, 1977. Because appellant did not file her suit until November 5, 1979, more than two years after Dr. Baron's treatment had terminated, her claim was barred by Minnesota's two year statute of limitations, Minn.Stat. § 541.-07(1).

## II.

### Discovery Rule

■ Appellant has raised this issue for the first time on appeal. This court will not review issues raised for the first time on appeal unless we choose to grant discretionary review. Minn.R.Civ.App.P. 103.04. Otherwise, the issue is not properly before this court. *See e.g., Morton v. Board of Commissioners,* 301 Minn. 415, 427, 223 N.W.2d 764, 771 (1974).

■ Appellant asks this court to reverse a longstanding rule of Minnesota law, the termination of treatment rule, and recognize a new standard, the discovery rule. The discovery rule, as adopted in some states, holds that the statute of limitations for medical malpractice actions does not begin to run until the negligent act is discovered. Appellant urges adoption of this rule.

Respondent Mercy Medical Center cites to our internal rules:

> The Court of Appeals is an intermediate appellate court. It is primarily decisional and error-correcting rather than a legislative or doctrinal court. Its primary function is the correction of errors by application of legal principles. Its task is to find the law, to state it and to apply it to the facts. *Only when there are no statutory or judicial precedents to follow will the Court of Appeals make new law.*

Internal Rules, Minn.Ct.App., Introduction (emphasis added). Here, where there exists longstanding judicial precedent to follow, we do not address abolishment of the termination of treatment rule.

## DECISION

The trial court properly granted respondent's summary judgment motion. Appellant's medical malpractice claim against respondent is barred by Minnesota's two-year statute of limitations. This court will not reverse longstanding judicial precedent by adopting the discovery rule over the termination of treatment rule.

Affirmed.

NIERENGARTEN and PARKER, JJ., concur specially.

NIERENGARTEN, Judge, concurring specially.

I concur in the result reached by the majority in this opinion. The rule is clear in Minnesota that termination of treatment rather than discovery of the effects of the negligent treatment governs when a cause of action for medical malpractice accrues. This court is obliged to follow such long standing precedent.

I write separately, however, because I believe it is time for this state to reject the termination of treatment rule, in favor of the "discovery doctrine;" especially in those cases involving erroneous diagnosis.

The rationale underlying the adoption of the termination rule was set forth by the Minnesota Supreme Court in *Johnson v. Winthrop Laboratories Division of Sterling Drug, Inc.*, 291 Minn. 145, 190 N.W.2d 77 (1971):

> " * * * A policy reason [for the rule] is that a patient must repose reliance upon his physician in the completion of the course of curative treatment, a relationship of trust which inhibits the patient's ability to discover acts of omission or commission constituting malpractice."

291 Minn. at 150, 190 N.W.2d at 80–81 (citing *Swang v. Hauser*, 288 Minn. 306, 309, 180 N.W.2d 187, 189–90 (1970).

Although such a policy of promoting mutual confidence between the physician and patient may be persuasive in a case involving a continued course of treatment, in those cases involving a single or isolated treatment adherence to the termination rule and its underlying rationale often brings about harsh and inequitable results for the injured patient.

In *Wyler v. Tripi*, 25 Ohio St.2d 164, 267 N.E.2d 419 (1971), the Ohio Supreme Court discussed the propriety of the termination rule:

> "Although the termination rule is a marked departure from the general rule, [cause of action accrues when negligent act occurs] it affords little relief in cases where the injury is one which requires a long developmental period before becoming dangerous and discoverable. In those situations, the termination rule extends the period at which the statute of limitations commences to run, but does so by a factor which bears no logical relationship to the injury incurred. The termination rule is further fallible in that it requires the patient to determine, at the time the relationship is terminated, that malpractice has taken place, when in fact he may have relied upon the very advice which constitutes malpractice."

25 Ohio St.2d at 168, 267 N.E.2d at 421 (citations omitted).

Use of the discovery rule eases the harsh results to innocent victims who by exercising even the greatest degree of care could not have known of the cited wrong. By focusing on discovery as the event which triggers the running of the statute of limitations, those who are injured as a result of negligent conduct of the attending physician, which injuries by their nature, may not become known for more than two years after the last treatment, will not be prohibited from seeking redress for such conduct.

PARKER, Judge (concurring specially).

I join in with Judge Nierengarten's specially concurring opinion to the extent of favoring adoption of the discovery rule in failure-to-diagnose cases. To adopt the discovery rule entirely might create more problems than it solves, but the very real danger cited by Judge Nierengarten of the statute barring a cause of action not discovered until two years after cessation of treatment requires serious consideration of a modified discovery rule.