Brigitte CIARDELLI, Respondent,

v.

Donald Bradley RINDAL, D.D.S., et al., petitioners, Appellants.

No. C6–97–173.

Supreme Court of Minnesota.

Aug. 20, 1998.

Gregory P. Bulinski, Charles E. Lundberg, Bassford, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for Appellants.

Timothy P. McCarthy, Jeffrey D. Bores, Chestnut & Brooks, P.A., Minneapolis, for Respondent.

## OPINION

TOMLJANOVICH, Justice.

Respondent Brigitte Ciardelli sued the appellants, Dr. Donald Rindal and HealthPartners (then Group Health Inc.), for dental malpractice in December 1995, alleging that Rindal failed to recommend surgery to correct and/or halt the progress of Ciardelli's temporomandibular joint dysfunction (TMJD). The main issue before us is whether a doctor's authorization of a prescription refill constitutes a part of "continuing treatment" for purposes of the statute of limitations governing medical malpractice claims. On the particular facts of this case, we conclude that it does not.

Ciardelli first consulted Rindal, a dentist in HealthPartners' Temporomandibular Joint (TMJ) Clinic, on May 20, 1986. Ciardelli suffered from pain, clicking, and locking in her jaw. Rindal diagnosed temporomandibular joint dysfunction (TMJD)—specifically, "right, [possibly] late stage internal derangement with locking." Over the next seven and one-half years, Rindal administered a conservative course of treatment, prescribing medications, physical therapy, and several orthotic devices for Ciardelli's condition. He ordered imaging studies in March 1992 and an MRI in September 1992.

In April 1992, Rindal prescribed physical therapy and Motrin to alleviate Ciardelli's increasing pain. From April 1992 to May 1993, Ciardelli had the Motrin prescription filled five times; each bottle contained 90 800–milligram tablets. When Ciardelli last visited Rindal, on December 29, 1992, she told him she had been taking the Motrin only when necessary to control her pain. Rindal recommended that Ciardelli continue taking the medication as needed and continue physical therapy. According to the treatment plan, a surgical consultation would have been the next step if these measures did not alleviate Ciardelli's symptoms. Rindal asked Ciardelli to return for an examination in six to eight weeks; however, she did not return.

On December 8, 1993, when Ciardelli sought another refill of the Motrin prescription, the pharmacy contacted Rindal for authorization. Rindal did not speak with Ciardelli; he simply authorized another prescription for one fill and one refill of the Motrin.

Ciardelli commenced this malpractice action on December 4, 1995, by effecting personal service of process on Rindal and HealthPartners. See Minn. R. Civ. P. 3.01. This was nearly three years after her last appointment with Rindal but just under two years from the date he authorized the last prescription for Motrin.

Ciardelli's main expert witness, Dr. Thomas Keane, would testify that Rindal deviated from the accepted standard of care by: (1) failing to "obtain TMJ imaging studies as soon as possible following the clinical presentation of symptoms consistent with TMJD"; (2) not recommending surgical intervention in 1986 or 1987, when Keane surmises Ciardelli's condition was at Stage II or III; and

(3) not consulting with, or referring Ciardelli to, a TMJD specialist qualified to manage her care. Keane avers that because of Rindal's inaction, Ciardelli has sustained severe, permanent injury to her temporomandibular joints, has had to undergo surgery, and likely will experience continued degeneration.

In granting Rindal's motion for summary judgment, the district court held that Rindal's treatment of Ciardelli terminated as of her last visit to his office. The Minnesota Court of Appeals reversed the district court's decision, holding that treatment did not terminate until Rindal authorized the last prescription. *See Ciardelli v. Rindal*, 565 N.W.2d 465, 468 (Minn.App.1997). We granted Rindal's petition for further review to decide whether Ciardelli's action is time-barred.

■ On appeal from a grant of summary judgment, this court reviews the record to determine whether any genuine issues of material fact exist and whether the district court erred in applying the law. *See Offerdahl v. University of Minn Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). The court views the evidence in the light most favorable to the party against whom summary judgment was granted. *See id.* "Where there are disputed questions of material fact as to whether a plaintiff is barred by the statute of limitations, these questions are to be decided by a jury." *Grondahl v. Bulluck*, 318 N.W.2d 240, 243 (Minn.1982).

## I.

■ Under Minnesota law, medical malpractice claims must be commenced within two years of the accrual of the cause of action. *See* Minn.Stat. § 541.07(1) (1996) (amended 1997). "Alleged negligence coupled with the alleged resulting damage is the gravamen in deciding the date when the cause of action accrues." *Offerdahl*, 426 N.W.2d at 429. Ordinarily, this means that "[t]he cause of action accrues when the physician's treatment for the particular condition ceases." *Grondahl*, 318 N.W.2d at 243. However, when the allegedly negligent conduct is comprised of a single act, the statute of limitations begins to run at the time the plaintiff sustains damage from that act, absent fraudulent concealment. *See Offerdahl*, 426 N.W.2d at 428–29.

■ Rindal argues that the "single act exception" bars Ciardelli's malpractice claim. A discrete act of negligence by a medical professional falls within the single act exception when "it was complete at [a] precise time [and] no continued course of treatment could either cure or relieve it." *Swang v. Hauser*, 288 Minn. 306, 309, 180 N.W.2d 187, 190 (1970). For example, we held that the statute of limitations began to run on the date a plaintiff sustained damage from an intrauterine device (IUD), the risks of which she claimed were not disclosed to her by the defendant doctor when the IUD was inserted. *See Offerdahl*, 426 N.W.2d at 429. Specifically, the plaintiff "sustained damage * * * when she was hospitalized for [pelvic inflammatory disease] and the * * * IUD was removed." *Id.; see also Murray v. Fox*, 300 Minn. 373, 376, 220 N.W.2d 356, 358 (1974).

■ Rindal observes that Ciardelli's expert, Keane, would testify that surgery should have been performed in 1986 or 1987. Hence, Rindal argues, his failure to obtain imaging studies promptly, recommend surgery, and refer Ciardelli to a specialist was a single, irreversible act that occurred in 1986 or, at the latest, 1987. The court of appeals rejected this contention, *see Ciardelli*, 565 N.W.2d at 467, as do we.

When read in the light most favorable to Ciardelli, the complaint asserts a pattern of negligence spanning the entire period of her treatment with Rindal. Thus, "it is most difficult to determine the precise time" of the negligence. *Swang*, 288 Minn. at 309, 180 N.W.2d at 189. While Keane might testify that surgery should have been performed in 1986 or 1987, when he surmises Ciardelli's TMJD was at Stage II or Stage III, it does not necessarily follow that surgery at Stage IV would have been fruitless in preventing at least some of the permanent damage that Ciardelli claims to have suffered. Because it is not clear when "the alleged resulting damage" occurred, *Offerdahl*, 426 N.W.2d at 429, the single act exception does not apply.

## II.

■ Ciardelli maintains—and the court of appeals agreed—that the course of treat-

ment continued up until December 1993, when Rindal authorized a renewal of the Motrin prescription. *See Ciardelli,* 565 N.W.2d at 468. We have stated that "[t]he statute of limitations will be extended when a doctor's negligence is part of a continuing course of treatment, such as when a doctor consistently fails to properly treat a fracture." *Fabio v. Bellomo,* 504 N.W.2d 758, 762 (Minn.1993). There are "three factors to be considered in determining when treatment ceases: (1) whether there is a relationship between physician and patient with regard to the illness; (2) whether the physician is attending and examining the patient; and (3) whether there is something more to be done." *Grondahl,* 318 N.W.2d at 243 *(citing Schmit v. Esser,* 183 Minn. 354, 358–59, 236 N.W. 622, 625 (1931)).

In *Grondahl,* we decided that summary judgment for the defendant was improper where the plaintiff asserted that she had consulted the doctor by telephone after her last office appointment with him. *See Grondahl,* 318 N.W.2d at 244.[1] The plaintiff commenced suit more than two years after the last office visit but within two years of her last telephone call to the doctor. *Id.* at 242. Under those circumstances, the court determined, a jury applying the three-factor test "might reasonably conclude" that the doctor did not cease treating the plaintiff until the date of their last telephone conversation, which took place less than two years before the plaintiff filed suit. *Id.* at 244; *see also Noland v. Freeman,* 344 N.W.2d 419, 420 (Minn.1984) (holding that summary judgment was improper where the parties disputed whether the plaintiff's last office visit related to the allegedly negligent surgery).

We do not think a jury reasonably could conclude that Rindal's treatment of Ciardelli's TMJD continued until he reauthorized the Motrin prescription. There cannot be a "relationship between physician and patient" when the physician cannot "attend[ ] and examin[e] the patient," *Grondahl,* 318 N.W.2d at 243, because the patient has failed to schedule the recommended visits to the physician and has failed to do so for a period well beyond that recommended by the physician. *Cf. Krause v. Farber,* 379 N.W.2d 93, 96 (Minn.App.1985), (holding that a doctor's alleged instruction to the patient to schedule an examination in six months' time did not toll the statute of limitations during that six-month period), *pet. for rev. denied* (Minn., Feb. 14, 1986).[2] Although there might have been "something more to be done," *Grondahl,* 318 N.W.2d at 243, Ciardelli effectively terminated the doctor-patient relationship by failing to return for follow-up care. *See Millbaugh v. Gilmore,* 30 Ohio St.2d 319, 285 N.E.2d 19, 21 (1972).

█ Nor did Ciardelli resume her treatment with Rindal by seeking a refill of the drug he had prescribed. In contrast to *Grondahl,* Ciardelli and Rindal had no direct communication regarding the refill; indeed, there is no indication in the record that Ciardelli was even aware that the pharmacy had contacted Rindal. We agree with the Texas Supreme Court that "a plaintiff who takes medication significantly beyond the period contemplated by the physician's prescription, without further attentions from the physician, is not being treated by that physician, but is engaging in self-treatment." *Rowntree v. Hunsucker,* 833 S.W.2d 103, 107 (Tex.1992).[3] Such self-treatment does not

---

1. In 1971, the defendant doctor in *Grondahl* diagnosed the plaintiff with multiple sclerosis (MS). *Grondahl,* 318 N.W.2d at 241. The plaintiff continued to seek treatment for MS from the doctor until at least September 1975, the date of her last office visit, or February 1977, when she last consulted him by telephone regarding a balance problem. *Id.* at 242. The MS diagnosis was incorrect; rather, the plaintiff suffered from an inner ear disturbance, which was diagnosed in July 1977 and for which she was treated successfully by two other doctors. *See id.* The plaintiff commenced her malpractice action in January 1979. *Id.*

2. The *Krause* court noted that the plaintiff had "not allege[d] that there was a regularly scheduled appointment at a future time" and that the plaintiff had not actually scheduled the appointment. *Krause,* 379 N.W.2d at 96.

3. The court of appeals attempted to distinguish *Rowntree* on the ground that the *Rowntree* plaintiff was taking medicine for a condition unrelated to the condition which the doctor allegedly had failed to diagnose. *See Ciardelli,* 565 N.W.2d at 468. According to the court, "[t]he [*Rowntree* ] court held that because it was the doctor's last chance to diagnose the condition properly, the date of the plaintiff's last visit to the doctor was

toll the statute of limitations. As a matter of law, Rindal's treatment of Ciardelli terminated, at the very latest, as of the time Ciardelli was to have returned to his office for follow-up care.

The decision of the court of appeals is reversed.

BLATZ, C.J, took no part in the consideration or decision of this case.

GILBERT, Justice (dissenting).

This case is before us on summary judgment. Therefore, we must view the evidence in a light most favorable to the party against whom the motion was granted. *Grondahl v. Bulluck,* 318 N.W.2d 240, 242 (Minn.1982) (citing *Vieths v. Thorp Fin. Co.,* 305 Minn. 522, 525, 232 N.W.2d 776, 778 (1975)). "Where there are disputed questions of material fact as to whether a plaintiff is barred by the statute of limitations, these questions are to be decided by a jury." *Id.* at 243 (citing *Schmit v. Esser,* 183 Minn. 354, 357, 236 N.W. 622, 624 (1931)). I agree that the single act exception does not apply in this case. However, I respectfully dissent from the majority's holding that as a matter of law Rindal's course of treatment of Ciardelli's TMJD did not continue until Rindal specifically authorized the prescription level pain medication Motrin by phone. We have stated that a jury may reasonably conclude that a course of treatment may continue by virtue of a telephone conversation between a doctor and a patient even after office visits have stopped. *Id.* at 243. Likewise, I would hold that a reasonable jury could find that Rindal's authorization of a refill of medication that he initially prescribed years prior as part of a course of treatment was a continuing part of that treatment.

We consider the following three factors to determine whether a continuing course of treatment has ceased: "(1) whether there is a relationship between physician and patient with regard to the illness; (2) whether the physician is attending and examining the patient; and (3) whether there is something

more to be done." *Id.* at 243. Here, beginning with the third factor, there was clearly something more to be done, which the majority acknowledges. Rindal indicated to Ciardelli at her December 1992 appointment that surgery may be the next step in her treatment. The first and second factors are closely related. Both factors existed at least through December 1992 when Ciardelli last went to see Rindal in his office. At that time Rindal had been treating Ciardelli for her TMJD for more than 6 years. The issue then is whether, when Rindal renewed Ciardelli's prescription, they had a doctor-patient relationship and Rindal was attending to Ciardelli.

Ciardelli first went to see Rindal about trouble with her jaw in May 1986. Rindal diagnosed her with TMJD and began treating her for the disorder. Rindal prescribed Motrin for Ciardelli in April 1992 during an office visit. Ciardelli last went to see Rindal in December 1992 at which time Rindal recommended that she continue to take the Motrin as needed and indicated that surgery might be a possibility if her symptoms did not improve. Rindal asked Ciardelli to return to see him in 6 to 8 weeks, which Ciardelli did not do. If all contact with Rindal's office had ended at this point, then I would agree that the doctor-patient relationship would have been terminated. However, Ciardelli's December 1992 office visit was not the last time that Rindal prescribed medication for Ciardelli for her TMJD.

When Ciardelli went to have her prescription filled on December 8, 1993, she had already used all of the refills that Rindal had previously authorized. Pharmacies are prohibited from refilling prescriptions without written or verbal consent from the prescriber. Minn.Stat. § 151.211 (1996). In fact, it is a misdemeanor to do so. Minn.Stat. § 151.29 (1996). Consequently, the pharmacist telephoned Rindal who specifically authorized another refill of the Motrin prescription for Ciardelli. Rindal gave authorization for a

the date on which the statute of limitations began to run." *Id.* This reading is in error. Because the matter was before them on appeal from summary judgment, the *Rowntree* court "[could not] say, as a matter of law, the condition of occluded arteries and high blood pressure [were] two un-

related conditions." *Rowntree,* 833 S.W.2d at 106. Rather, as discussed *supra,* the *Rowntree* court reached the conclusion it did because it determined that the plaintiff had been "engag[ed] in self-treatment." *Id.* at 107.

refill for Motrin to alleviate Ciardelli's symptoms from TMJD. Rindal noted the new prescription authorization in Ciardelli's medical records, which he maintained in his office. The refill was for medication that Ciardelli had been taking as part of Rindal's treatment plan for her. Under these circumstances, a reasonable jury could conclude that the doctor-patient relationship between Ciardelli and Rindal existed when Rindal authorized the refill and that Rindal was attending to Ciardelli.

The majority cites *Rowntree v. Hunsucker* for the proposition that someone "who takes medication significantly beyond the period contemplated by the physician's prescription, without further attentions from the physician, is not being treated by that physician, but is engaging in self-treatment." 833 S.W.2d 103, 107 (Tex.1992). However, the "self-treatment" to which *Rowntree* refers is absent in this case. In *Rowntree,* the plaintiff, who suffered from hypertension, went to see Dr. Rowntree for treatment on October 4, 1985. *Id.* at 103. Rowntree prescribed the medication Sectral. The plaintiff returned to see Rowntree several additional times through September 15, 1986 which was the date of her last office visit to Rowntree. *Id.* at 103–04. At that time Rowntree continued the plaintiff's prescription. *Id.* at 104.

On May 22, 1987, the plaintiff called Rowntree requesting a refill for the medication, and Rowntree authorized five refills. *Id.* On January 5, 1988, the plaintiff suffered a debilitating stroke as a result of an occluded carotid artery. *Id.* More than a year later, the plaintiff brought suit against Rowntree for failure to diagnose the occluded carotid artery. *Id.* The family did not allege that the Sectral was in any way the cause of the patient's injury. The *Rowntree* court determined that in order to come within the statute of limitations for the malpractice claim, Rowntree's treatment of the plaintiff had to have lasted until at after August 15, 1987. *Id.*

The plaintiffs argued that treatment continued as long as the plaintiff was *taking* the medication, or at least when she filled the last previously authorized prescription of Sectral, which was 7 months after Rowntree was called about the refill. *Id.* at 106. In rejecting this argument, the *Rowntree* court

cited cases that involved patients who obtained a refill from a pharmacy without the participation of the physician. *Id.* at 106–07 (citing *Bernardo v. Ayerest Lab.,* 99 A.D.2d 430, 470 N.Y.S.2d 395 (1984); *Fleishman v. Richardson–Merrell, Inc.,* 94 N.J.Super. 90, 226 A.2d 843 (1967)). The *Rowntree* court explained that:

> [c]ommon to all of these cases is a recognition that a plaintiff who takes medication significantly beyond the period contemplated by the physician's prescription, without further attentions from the physician, is not being treated by the physician, but is engaging in self-treatment. The cases stand for the proposition that a physician may establish a course of treatment by enlisting the aid of the patient to self-administer a medication, but only if the physician controls the treatment and continues to render medical services.

*Id.* at 107. What *Rowntree* explicitly rejected was either a rule that would extend the statute of limitations by a patient's taking of medication or a rule that would extend the statute of limitations until all authorized prescription refills had been obtained. *Id.*

In contrast, Ciardelli argues that the last date that Rindal took an active role in treating her TMJD, by prescribing a refill of medication for her, was the last day of treatment. *See, e.g., Bikowicz v. Nedco Pharmacy, Inc.,* 114 A.D.2d 708, 494 N.Y.S.2d 541, 542 (1985) (concluding that the doctor's treatment of the plaintiff terminated either when the direct consultations ended, or when the doctor last consulted the pharmacist about the refills regarding dosage). This action by Rindal establishes that he maintained control of and attended to Ciardelli's treatment through December 8, 1993, when he authorized the prescription. Without Rindal's authorization, the prescription would not have been filled. A physician's specific authorization of a refill prescription to treat an ongoing ailment for which the physician had previously treated the patient for more than 7 years and had last seen the patient within the past year, arguably constitutes a continuing course of treatment. At a minimum, the facts of this case raise a question for a jury. A jury may reasonably conclude that Rindal's

**916**

treatment of Ciardelli's TMJD continued through his specific authorization of the Motrin refill in December 1993. Accordingly, I would reverse the trial court's grant of summary judgment and affirm the court of appeals and remand for trial.