Michelle D. BLISS, Appellant,

v.

**Dr. Sheridan STEVENS, Respondent.**

No. C4–95–1821.

Court of Appeals of Minnesota.

Feb. 27, 1996.

Helen Dovolis, Edina, for appellant.

Rosalyn W. Otieno, Bloomington, for respondent.

Considered and decided by NORTON, P.J., and TOUSSAINT, C.J., and PARKER, J.

## OPINION

NORTON, Judge.

This case concerns a medical malpractice claim against respondent medical doctor. Appellant contends that the trial court erred when it summarily dismissed her suit on the ground that she failed to deliver the summons and complaint timely to the appropriate sheriff for service before the two-year statute of limitations expired. A disputed issue of fact remains whether, when she delivered the summons and complaint to the Hennepin County Sheriff, appellant reasonably believed that respondent doctor resided in Hennepin County. We reverse and remand.

## FACTS

Appellant Michele D. Bliss was referred to respondent Dr. Sheridan Stevens by her neurologist for back problems resulting from a motor vehicle accident. Bliss had oversized breasts, which exacerbated her back problems. On March 4, 1993, Dr. Stevens performed a bilateral breast reduction (mammaplasty) surgery on Bliss.

Bliss remained in the hospital until March 11, 1993, when she was released for office follow-up. Dr. Stevens next saw Bliss on March 17, 1993, at his office in Minneapolis. Bliss claims that she discussed with Dr. Stevens her concern about "dog ears" on her breasts resulting from the surgery. Dr. Stevens replied that they were temporary swellings. He also informed her that he was closing his office and transferring his records to Drs. Kevin Straffe and Brian Hubble at Reconstructive Cosmetic Plastic Surgery, also in Minneapolis. Dr. Stevens did not inform Bliss that she would need any further follow-up.

On March 25, 1993, Bliss stopped by Dr. Stevens's office and left him a going away gift of flowers. She learned then that Dr. Stevens was moving to "Boise, Idaho." In an undated letter to his patients, Dr. Stevens stated that he would close his office permanently on March 31, 1993. He stated: "For personal reasons, I have decided to close this office, Elliot Park Plastic Surgery, Ltd. and relocate to another state."

When Bliss's swellings did not disappear, she sought treatment with Dr. Straffe on April 19, 1993. Dr. Straffe's records state his impression:

> I think that the overall result of the surgery is satisfactory with exception of very large dog ears on both sides. When I review her preoperative photographs it is very clear that she had a very significant roll out this way and Dr. Stevens stopped his excision at the lateral aspect of the ptotic portion of her breast. It would be optimum to remove these lateral extensions. Why this wasn't done at the time of surgery is something I am not aware of.

On August 19, 1994, Bliss mailed a notice-of-claim letter to Dr. Stevens. The postal service returned this letter, marked "Return to Sender." On August 25, 1994, the postal service returned another notice-of-claim letter on which it provided the forwarding address of "29 Park Ln., Minneapolis, MN 55416-4339," and a notice that the forwarding time had expired. Bliss also sent several notice-of-claim letters in August, September, and October, 1994 to the doctors who had purchased Dr. Stevens's practice, directing them to forward the claim letter to Dr. Stevens. She received no response.

On October 19, 1994, Bliss mailed a notice of claim letter to Dr. Stevens at the 29 Park Lane forwarding address she had received from the postal service. Dr. Stevens finally responded to the correspondence. A claims representative for Steven's malpractice insurance carrier then had several conversations with Bliss's attorney before Bliss brought suit. Bliss's attorney did not verify Dr. Steven's residence with the claims representative, nor did the representative offer an address.

Bliss sought the services of the Hennepin County Sheriff to serve the summons and

complaint on Dr. Stevens at his 29 Park Lane address. The sheriff's department received the summons and complaint for service on March 20, 1995. After Dr. Stevens's mother refused to accept service at the Park Lane address, the sheriff's office returned a Certificate of Unserved Process to Bliss dated March 21, 1995, giving this reason for unserved process: "Moved 1 month ago to: 2829 Mansion Drive Number 505, Independence, MO 64055."

Bliss then sent the summons and complaint to the county sheriff in Missouri where Dr. Stevens had moved. The sheriff received the summons and complaint on March 23, 1995, and completed personal service on Dr. Stevens on March 27, 1995.

Dr. Stevens moved to dismiss Bliss's action for lack of service within the two-year statute of limitations for malpractice claims. The district court granted the motion.

## ISSUE

Did the district court appropriately dismiss appellant's action on the ground that she did not deliver the summons and complaint to the appropriate sheriff for service before the statute of limitations expired?

## ANALYSIS

■ Dr. Stevens contends that this court must apply an abuse of discretion standard of review to the district court's dismissal. We disagree. Dr. Stevens moved for dismissal on the ground that Bliss's complaint did not state a claim upon which relief can be granted. *See* Minn. R. Civ. P. 12.02(e). If, on a rule 12 motion to dismiss,

> matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided for in rule 56.

Minn.R.Civ.P. 12.03. Where a case involves a motion for judgment on the pleadings, and the court considers more than the pleadings, the appellate court reviews the district court's determination under a summary judgment standard. *Carlson v. Lilyerd,* 449 N.W.2d 185, 187 (Minn.App.1989), *review denied* (Minn. Mar. 8, 1990). Accordingly, we

apply a summary judgment standard here, because the district court considered more than the pleadings when it dismissed Bliss's suit.

■ On appeal from a summary judgment, this court determines whether any genuine issues of material fact exist and whether the district court erred in its application of the law. *Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 112 (Minn.1992). We must view the evidence in a light most favorable to the party against whom summary judgment was granted and resolve all doubts and factual inferences in favor of the nonmoving party. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988); *Nord v. Herreid,* 305 N.W.2d 337, 339 (Minn. 1981).

■ This case involves application of the statute of limitations for medical malpractice claims. A jury should decide fact questions regarding whether a statute of limitations bars a claim. *Grondahl v. Bulluck,* 318 N.W.2d 240, 243 (Minn.1982).

■ The statute of limitations provides that an individual must commence an action against a physician or surgeon for medical malpractice within two years of the date on which the cause of action accrued. Minn. Stat. § 541.07(1) (1994). A cause of action for medical malpractice generally accrues "when the physician's treatment for the particular condition ceases." *Grondahl,* 318 N.W.2d at 243. The supreme court has directed the court to consider three factors in determining when treatment ceases:

> (1) whether there is a relationship between physician and patient with regard to the illness; (2) whether the physician is attending and examining the patient; and (3) whether there is something more to be done.

*Id.* (citing *Schmit v. Esser,* 183 Minn. 354, 358–59, 236 N.W. 622, 625 (1931)) (footnote omitted).

Bliss argues: the district court erred when it determined that no questions of material fact exist about whether the last date of treatment was Bliss's visit to the doctor who bought Dr. Stevens's practice, whether delivery of the summons and complaint to the

Hennepin County Sheriff was appropriate, and whether Dr. Stevens moved out of state to evade service. We will address each argument in turn.

### A. Last day of treatment

■ Bliss contends that her last day of treatment, for purposes of the statute of limitations, was her visit with Dr. Straffe on April 19, 1993. But Bliss's claim is against Dr. Stevens, who ended his treatment of her on March 17, 1993. Based on this fact, the district court determined that Bliss's cause of action against Dr. Stevens accrued on March 17, 1993. We agree.

> If there is nothing more to be done by the physician as to the particular injury or malady which he was employed to treat or if he ceases to attend the patient therefor, the treatment ordinarily ceases without any formality.

*Schmit,* 183 Minn. at 359, 236 N.W. at 625, *quoted in Grondahl,* 318 N.W.2d at 243 n. 2.

■ Bliss claims, however, that her treatment with Dr. Straffe was a continuation of the treatment by Dr. Stevens. But Dr. Stevens's records indicated Bliss's treatment was completed; he referred her back to her neurologist's care. Dr. Stevens's letter to his patients and Bliss's affidavit do not give an inference of referral for continued treatment to Dr. Straffe.

An issue arose at oral argument regarding the possibility of an agency relationship between the doctors that might extend the last day of treatment. *Cf. Peterson v. Fortier,* 406 N.W.2d 563, 566 (Minn.App.1987) (holding dismissal of claim against surgeon improper because disputed issues of fact existed over whether, under joint enterprise theory, surgeon's treatment did not terminate until family doctor's treatment of ailment terminated), *review denied* (Minn. July 31, 1987). We will not consider the agency issue, however, because Bliss did not raise that issue below. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (appellate court generally considers only issues presented to and considered by trial court).

The termination of treatment rule allows a patient to

> repose reliance upon [her] physician in the completion of the course of curative treatment, a relationship of trust which inhibits the patient's ability to discover acts of omission or commission constituting malpractice. The physician must accordingly assume a most substantial burden to establish with certainty that his patient actually knew, or should have known, of the malpractice prior to the end of treatment.

*Haberle v. Buchwald,* 480 N.W.2d 351, 355 (Minn.App.1992) (quoting *Swang v. Hauser,* 288 Minn. 306, 309, 180 N.W.2d 187, 189–90 (1970)), *review denied* (Minn. Aug. 4, 1992). These concerns are not relevant here, because Bliss did not continue to see Dr. Stevens after March 17, 1993. On the record before us, the trial court correctly determined that Bliss's cause of action against Dr. Stevens accrued on March 17, 1993.

### B. Appropriate sheriff

■ A civil action is commenced when a summons is served upon the defendant or when "the summons is delivered to the sheriff in the county where the defendant resides for service." Minn.R.Civ.P. 3.01. Commencement of an action by delivering the summons to the sheriff "shall be ineffectual unless within 60 days thereafter the summons is actually served on that defendant or the first publication thereof is made." *Id.* As a result of the sixty-day grace period under rule 3.01(c),

> it is possible for a plaintiff to commence an action on the final day of the limitations period and for the defendant to hear nothing of it until 60 days later. The lateness of notice does not invalidate the lawsuit, so long as the action is commenced within the limitations period.

*Carlson v. Hennepin County,* 479 N.W.2d 50, 55 (Minn.1992).

■ Bliss contends that delivery to the Hennepin County Sheriff on March 20, 1995,[1] satisfied this rule and, therefore, the action against Dr. Stevens was commenced within

---

1. The parties agree that, based on the accrual of this action on March 17, 1993, the last day upon which Bliss could commence suit against Dr. Stevens was Monday, March 20, 1995.

the statute of limitations. The district court, however, held that delivery to the Hennepin County Sheriff did not commence the action, because Dr. Stevens did not then reside in Hennepin County. Bliss argues that the record contains evidence showing she had reason to believe Dr. Stevens was residing in Hennepin County, thus barring summary judgment against her on this issue. We agree. Delivery of the summons to the sheriff of the county where a defendant previously has lived satisfies rule 3.01 and commences a suit against the defendant if the plaintiff reasonably believes that the defendant still lives in that county at the time the plaintiff forwards process to the sheriff. *McBride v. Bitner*, 310 N.W.2d 558, 563 (Minn.1981).

We note that rule 3.01 has been amended since *McBride*. Prior to 1985, rule 3.01 provided that an action commenced when the summons was served on each defendant or was "delivered to the proper officer for such service." Minn.R.Civ.P. 3.01 (1984). The supreme court has consistently interpreted that language to provide that summons be delivered to the sheriff of the county where the defendant resided. *Cf. McBride*, 310 N.W.2d at 561 (holding sheriff of county, where plaintiff believed defendant resided, to be "proper officer" for service); *Berghuis v. Korthuis*, 228 Minn. 534, 536–37, 37 N.W.2d 809, 811 (1949) (interpreting and applying Minn.Stat. § 541.12, the statute that preceded rule 3.01). This interpretation mirrors the current language of rule 3.01. *Cf.* Minn.R.Civ.P. 3.01(c) (1995) (requiring delivery "to the sheriff in the county where the defendant resides for service").

The supreme court takes a "liberal view of [rule 3.01's] requirement, at least regarding the defendant's residence." *Erickson v. Coast Catamaran Corp.*, 414 N.W.2d 180, 183 (Minn.1987). In *Erickson*, the supreme court observed that the amendments to rule 3.01 indicated no intention to change existing requirements relating to residency. *Id.* Accordingly, we hold that the rule stated in *McBride* is still applicable, and delivery to the county sheriff commences an action if the

plaintiff reasonably believes the defendant resides in that county.

Dr. Stevens relies on *Krause v. Kim*, 379 N.W.2d 91 (Minn.App.1985), *review denied* (Minn. Feb. 14, 1986), and *Johnson v. Husebye*, 469 N.W.2d 742 (Minn.App.1991), *review denied* (Minn. Aug. 2, 1991). He contends these cases require a determination here that delivery of Bliss's summons and complaint to the Hennepin County Sheriff for service on Dr. Stevens, after he no longer resided in this state, constituted delivery to the wrong sheriff and did not commence the action. We disagree. In *Krause*, 379 N.W.2d at 93, delivery to the Hennepin County Sheriff could not commence the action, because the defendant, Dr. Kim, never resided in Hennepin County. Further, Krause had no reason to believe Dr. Kim lived in Hennepin County; Krause had given Dr. Kim's Carver County residence to the Hennepin County Sheriff. *Id.* In contrast, here the record contains evidence that Dr. Stevens had resided in Hennepin County. *Husebye*, 469 N.W.2d at 745, is distinguishable, because service on that defendant occurred after the 60–day grace period in rule 3.01. Here, service occurred within the grace period.

The circumstances here are similar to those in *Berghuis*, 228 Minn. at 535, 37 N.W.2d at 810. In that case, the two-year statute of limitations expired on April 14, 1948. The plaintiff delivered the summons and complaint to the sheriff of Kandiyohi County on April 8, 1948. *Id.* The plaintiff believed that the defendant, who had been residing in Kandiyohi County at the time of the injury, was still a resident of that county. *Id.* In fact, however, the defendant had resided in Kansas City, Missouri, for more than one year. *Id.* The court held that delivery of the summons and complaint to the sheriff of Kandiyohi County on April 8, 1948, commenced the action, because the defendant was personally served with the summons on May 29, 1948, within the 60 days provided by the statute which then governed service.[2] *Id.* at 537, 37 N.W.2d at 811.

---

2. The statute in *Berghuis* contains similar language to Minn.R.Civ.P. 3.01 as it existed prior to the 1985 amendment.

Here, Bliss had obtained a Hennepin County forwarding address for Dr. Stevens. Dr. Stevens had responded to a claim letter sent to that residential address just five months before Bliss delivered the summons and complaint to the sheriff. The March 1995 sheriff's notation regarding the attempted service at that address stated that Dr. Stevens had "[m]oved 1 month ago." The sheriff then listed an address in Independence, Missouri, which is the only evidence specifically indicating when Dr. Stevens may have moved out of state. Based on this evidence, a factfinder could determine that Bliss reasonably believed that Dr. Stevens resided in Hennepin County when she delivered the pleadings to the Hennepin County Sheriff in March 1995.

Dr. Steven's undated letter to his patients does not compel a contrary finding. That letter explained that Dr. Stevens had decided to close his office on March 31, 1993, for "personal reasons" and that he planned to "relocate to another state." The letter did not give a time for Dr. Stevens's departure from the state or specify a destination, indicating that his plans were not firm at that time. The record is devoid of any other evidence that Dr. Stevens moved out of Hennepin County prior to 1995.

Accordingly, the evidence, viewed in Bliss's favor, indicates that the sheriff was informed that Dr. Stevens resided in Hennepin County until one month before service was attempted in March 1995. The district court seems to have weighed the evidence in favor of Dr. Stevens and resolved all inferences in his favor when it determined, on this record, that Bliss should have known that Dr. Stevens resided out of state when she delivered the summons and complaint to the Hennepin County Sheriff. This decision was erroneous. The court should have viewed the evidence in the light most favorable to Bliss, the nonmoving party, and should have resolved all doubts and factual inferences in her favor. *Nord*, 305 N.W.2d at 339.

### C. Avoidance of service

■ Dr. Stevens's affidavit is remarkably silent about specific dates and facts. Nevertheless, the record does not contain sufficient evidence to create a fact dispute over whether Dr. Stevens was avoiding service. At best, the record shows: Dr. Stevens told his patients in 1993 that he intended to move "to another state"; someone, not Dr. Stevens, told Bliss the doctor was moving to Boise, Idaho; Dr. Stevens finally moved to Missouri in 1995, one month before the Hennepin County Sheriff attempted service; and Dr. Stevens knew of Bliss's claim against him when he moved. This record is insufficient to show avoidance of service.

### DECISION

Bliss's claim accrued on March 17, 1993, the date Dr. Stevens last saw and treated her. The record contains disputed facts about whether Bliss reasonably believed that Dr. Stevens resided in Hennepin County when Bliss delivered the summons and complaint to the Hennepin County Sheriff for service. The district court erred when it summarily dismissed Bliss's complaint for failure to deliver the summons and complaint to the proper sheriff for service before the statute of limitations expired.

**Reversed and remanded.**