STATE of Wisconsin, Plaintiff-Respondent,

v.

Cedric JOHNSON, Defendant-Appellant.†

Court of Appeals

*No. 96–1532–CR. Submitted on briefs March 12, 1997.—Decided April 15, 1997.*

(Also reported in 565 N.W.2d 191.)

†Petition to review denied.

196

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William J. Tyroler,* first assistant state public defender, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Maureen McGlynn Flanagan,* assistant attorney general.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

FINE, J.   Cedric Richard Johnson was convicted on a guilty plea of armed robbery, *see* § 943.32, STATS., and was sentenced to an indeterminate prison term of fifteen years. He appeals from the judgment and the trial court's denial without a hearing of his motion for postconviction relief. He raises two issues. First, he contends that the trial court's colloquy with him at the plea hearing did not establish that he understood the nature of the crime to which he was pleading guilty. Second, he contends that he is entitled to a new sentence because he is allegedly not receiving adequate medical treatment in prison. We affirm.

The only testimony concerning the armed-robbery charge was the victim's testimony at the preliminary examination. She testified that she was sitting in her car outside of a fast-food store waiting for her friend to make a purchase when Johnson, whom she did not know, opened the car door, got in, and drove off with her in the car. Telling her that it was not "a game," Johnson warned her that he would kill her unless she gave him money. According to the victim, Johnson made her believe that he had a gun in his coat pocket,

and he threatened to shoot her. The victim never did, however, see a gun. Ultimately, after failing to get money from the victim, Johnson took the car, which belonged to the victim's boyfriend.

Prior to accepting Johnson's guilty plea to armed robbery, the trial court asked Johnson whether his lawyer had explained to him "what the district attorney would have to prove in order to convict you if this case went to trial." Johnson replied that he did. The trial court also asked the prosecutor to summarize what the State would prove if the case went to trial. The prosecutor did, essentially summarizing the victim's preliminary-examination testimony. Johnson, after contending that he did not in fact have a gun and that he did not physically harm the victim, agreed that the summary was accurate. Johnson also filed with the trial court a "Guilty Plea Questionnaire and Waiver of Rights Form" in which he attested that "I understand the elements of the offense and their relationship to the facts in this case and how the evidence establishes my guilt."

1. *Plea colloquy.*

Johnson contends that he should be able to withdraw his guilty plea because the trial court's plea colloquy was deficient. Specifically, his postconviction lawyer alleged "on defendant's behalf that at the time defendant entered his guilty plea" that Johnson "did not in fact understand all of the elements of armed robbery," specifically, that he "did not understand that intent to steal (i.e. deprive the owner permanently of possession of certain property) was a necessary element of the offense." There is no allegation, supported by specific facts, that Johnson would not

have pled guilty had he known what, through counsel, he denies knowing.

Before accepting a plea from a defendant, a trial court must "[a]ddress the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge." Section 971.08(1)(a), STATS. The trial court must, therefore, establish that the defendant has "an awareness of the essential elements of the crime." *State v. Bangert,* 131 Wis. 2d 246, 267, 389 N.W.2d 12, 23 (1986). The trial court can do this in any one of three ways: 1) by personally summarizing the elements for the defendant; 2) by asking defense counsel whether he or she explained the elements of the crime to the defendant, and then asking the lawyer to "reiterat[e]" what he or she told the defendant; or 3) by "expressly refer[ing] to the record or other evidence of defendant's knowledge of the nature of the charge established prior to the plea hearing." *Id.,* 131 Wis. 2d at 268, 389 N.W.2d at 23. In giving examples of what may constitute compliance with the third alternative, *Bangert* explained: "A trial judge may also specifically refer to and summarize any signed statement of the defendant which might demonstrate that the defendant has notice of the nature of the charge." *Ibid.* This the trial court did.[1] This satisfies the trial court's

---

[1] THE COURT:  Did your lawyer explain to you what the district attorney would have to prove in order to convict you if this case went to trial?

DEFENDANT:  Yes, Your Honor.

THE COURT:  Did he also discuss with you any defense that you might have to this charge?

DEFENDANT:  Yes, Your Honor.

THE COURT:  Did your lawyer explain to you what your rights are, including your constitutional rights?

burden under § 971.08(1)(a) as interpreted by *Bangert*. *See State v. Moederndorfer*, 141 Wis. 2d 823, 828–829 & n.1, 416 N.W.2d 627, 630 & n.1 (Ct. App. 1987).[2]

## 2. *Re-sentencing.*

Johnson seeks a reduction of his sentence because he claims that he is receiving what he contends is "inadequate" medical treatment in prison. He wants a

DEFENDANT: Yes, Your Honor.

THE COURT: Are those the rights contained in this plea questionnaire and waiver of rights form with your signature on it?

DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that by pleading guilty, you're giving up these rights?

DEFENDANT: Yes, Your Honor.

THE COURT: Does your signature on this form signify that your lawyer answered all of your questions to your satisfaction?

DEFENDANT: Yes, Your Honor.

THE COURT: Does it also signify that you understand what's in this paper that you signed?

DEFENDANT: Yes, Your Honor.

THE COURT: And does it also signify that you understand what you're doing here this morning?

DEFENDANT: Yes.

[2] The State argues that Johnson's failure to allege, and support that allegation by specific facts, that he would not have pled guilty if he understood the element about which he claims ignorance is also fatal to his claim for relief. *See State v. Bentley*, 201 Wis. 2d 303, 315–317, 544 N.W.2d 50, 55–56 (1996) (ineffective-assistance-of-counsel claim). In light of our resolution of Johnson's contention that the trial court violated § 971.08(1)(a), STATS., and *State v. Bangert*, 131 Wis. 2d 246, 267, 389 N.W.2d 12, 23 (1986), we need not address *Bentley's* applicability to this case. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed); *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) (cases should be decided on the "narrowest possible ground").

liver transplant.[3] Johnson's treating physician suggested that Johnson be considered for such a procedure.[4] The medical director of the Bureau of Health Services of the Department of Corrections, however, concluded that Johnson was "no candidate for liver transplant." The record does not reveal the medical director's reasons. In denying without a hearing Johnson's motion for a reduction in his sentence, the trial court concluded that Johnson had not raised a "new factor" inasmuch as Johnson's medical condition was known to both Johnson and to the trial court prior to sentencing.[5] We agree.

---

[3] He also contends, in an otherwise undeveloped argument, that "the prison's failure to offer a transplant makes the sentence harsh and excessive." We discuss this contention in the context of our analysis of whether Johnson is entitled to be resentenced.

[4] The following is an excerpt from the physician's report:

IMPRESSION: Mr. Johnson has end-stage liver disease due to cirrhosis of the liver caused by chronic hepatitis C and prior alcohol abuse. As stated before, he has antibodies against delta virus, but absent markers of chronic hepatitis B. The major issue currently is depressed synthetic excretory function of his liver and difficult to control hepatic encephalopathy. He has, on previous imaging studies, evidence of marked collateral circulation due to portal hypertension. Under these circumstances, I think that the patient needs to be considered for liver transplantation as the only viable option for resolution of his symptoms and liver failure.

[5] The trial court explained in its written decision:

[T]he defendant has not set forth the existence of a new factor warranting a modification of his sentence. The fact that the taxpayers will not pay for a liver transplant for the defendant who has, by his admission, abused alcohol and drugs since he was a child, because there is disagreement among the attending physicias [sic] as to whether he needs one is not a new factor justifying modification of the sentence. Defendant may pursue

A sentence can be modified to reflect consideration of a new factor. *State v. Macemon*, 113 Wis. 2d 662, 668, 335 N.W.2d 402, 406 (1983). A new factor is a fact that is highly relevant to the imposition of sentence but was not known to the sentencing judge either because it did not exist or because the parties unknowingly overlooked it. *Ibid.* There must also be a nexus between the new factor and the sentence; the new factor must operate to frustrate the sentencing court's original intent when imposing sentence. *State v. Michels*, 150 Wis. 2d 94, 99, 441 N.W.2d 278, 280 (Ct. App. 1989). Whether a new factor exists presents a question of law that this court reviews *de novo. Id.*, 150 Wis. 2d at 97, 441 N.W.2d at 279. If a new factor exists, the trial court must, in the exercise of its discretion, determine whether the new factor justifies sentence modification. *Ibid.*

In sentencing Johnson, the trial court indicated that it was taking into consideration Johnson's medical condition:

> I'm going to take into consideration factors that have been discussed here this morning and take into consideration some of the good things that you've done, and the fact that you have a medical condition that requires a great deal of medical attention, which I'm sure you'll be able to get while you're in prison. The hospitals at Madison provide some of the best medical treatment that's available in the State.

The trial court did not condition its sentence on the availability of any specific procedure—nor could it. *See*

other remedies if he believes that he is not getting all of the medical attention that he desires.

*State v. Gibbons*, 71 Wis. 2d 94, 98–99, 237 N.W.2d 33, 35 (1976) (sentencing court may not impose conditions on the department). Thus, the failure of the prison authorities to further process Johnson for a liver transplant could not and, as explained by the sentencing court in its decision denying Johnson's postconviction motion, did not frustrate that court's original intent in imposing sentence. *See Michels*, 150 Wis. 2d at 99, 441 N.W.2d at 280 (unexpected circumstance must frustrate the sentencing court's original intent in order to be a "new factor"). The trial court considered the appropriate factors in sentencing Johnson, and, appropriately, left to others the treatment of Johnson's condition.

Johnson's complaint is medical—a difference of opinion between physicians. Re-sentencing or a modification of the sentence already imposed is not the mechanism by which these medical differences can be resolved. *See Michels*, 150 Wis. 2d at 95, 100, 441 N.W.2d at 279, 281 ("worsening health is not a new factor entitling [defendant] to resentencing"; "worsening of [defendant]'s health does not frustrate the sentencing judge's original intent"); *cf. State v. Krieger*, 163 Wis. 2d 241, 259–260, 471 N.W.2d 599, 606 (Ct. App. 1991) (Adverse conditions of confinement, even where they may constitute an Eighth-Amendment violation, do not entitle prisoner "to a modification of his sentence, but only to corrective measures directed to changing the conditions of confinement."); *State v. Lynch*, 105 Wis. 2d 164, 171, 312 N.W.2d 871, 875 (Ct. App. 1981) (failure of prison to provide mental-health treatment envisioned by trial court is not ground for sentence modification; "[p]risoners are entitled to challenge the conditions of

their confinement by appropriate writs"). As the trial court indicated in its decision, Johnson may pursue other remedies if he believes that he is unlawfully being denied viable and appropriate treatment. He has not alleged the existence of a "new factor" as that term of art has been construed.[6] Accordingly, re-sentencing is not appropriate.

*By the Court.*—Judgment and order affirmed.

SCHUDSON, J. *(concurring in part; dissenting in part).* Although I agree with the majority's conclusion regarding Johnson's plea, I note that this particular trial court, once again, has generated an otherwise unnecessary challenge to the sufficiency of a guilty plea

---

[6] Johnson argues that the following *dictum* in *State v. Michels*, 150 Wis. 2d 94, 100 n.1, 441 N.W.2d 278, 281 n.1 (Ct. App. 1989) (post-incarceration heart attack suffered by defendant with pre-existing heart problems), supports his argument: "Michels does not allege that his care has been inadequate, or that his continued incarceration is cruel and unusual punishment" and that "[t]he trial court found that Michels' treatment needs are being met." We disagree. First, *Michels* did not modify Wisconsin's long-standing application of the new-factor doctrine to make a "new factor" the alleged failure of the department to meet a prisoner's medical needs. Indeed, *Michels* noted specifically that it was adhering to the established "line of cases": "We conclude that a 'new factor' must be an event or development which frustrates the purpose of the original sentence. There must be some connection between the factor and the sentencing—something which strikes at the very purpose for the sentence selected by the trial court." *Id.*, 150 Wis. 2d at 99, 441 N.W.2d at 280. Second, re-sentencing is not, as we point out in the main body of this opinion, the remedy for a violation of the Eighth Amendment. *State v. Krieger*, 163 Wis. 2d 241, 259–260, 471 N.W.2d 599, 606 (Ct. App. 1991).

by employing a conversational colloquy that just barely touches all the bases.

I disagree with the majority's conclusion regarding Johnson's motion to modify his sentence.

Johnson asks that we remand for the trial court's consideration of his sentence-modification motion. He asserts that he is not receiving adequate medical care for a life-threatening condition; that the prison physician has denied him the liver transplant his doctor says he needs to survive. He concedes that, under *State v. Michels*, 150 Wis. 2d 94, 441 N.W.2d 278 (Ct. App. 1989), deterioration in health generally will be a matter for the department of corrections and the parole board, not the sentencing court. *Id.* at 99–100, 441 N.W.2d at 280–81. He fairly argues, however, that *Michels* "does not apply where the department of corrections provides fatally inadequate care."

The State does not disagree. The State argues, however, that Johnson's claim is "at best premature" because he has failed to offer clear and convincing evidence that the needed treatment actually has been denied. The State further argues that denial of a liver transplant would not frustrate the purpose of the original sentence given that the trial court was aware of Johnson's serious condition and, in part for that reason, ordered only fifteen years of a potential forty-year sentence. The State, and now the majority, cut too fine a line.

As the majority acknowledges, the sentencing court told Johnson, "[Y]ou have a medical condition that requires a great deal of medical attention, which I'm sure you'll be able to get while you're in prison." Majority op. at 204. Johnson contends, however, that despite that judicial assurance and despite his

physician's recommendation, the prison doctor has refused to authorize a life-saving procedure.

The State, the trial court, and the majority declare that Johnson's motion does not provide enough to gain a hearing. What more do they need? The trial court stated it was "sure" Johnson would "be able to get [required medical attention] while in prison." Johnson now says the department of corrections is denying him the medical attention required to save his life.

I do not know whether Johnson's claim has merit. Without an evidentiary hearing, I can't know. The majority can't know either and, without an evidentiary hearing, the trial court can't find out. This court should require the trial court to find out. Johnson needs a hearing, before it's too late.