94 N.J. Super. 90 (1967)
226 A.2d 843
MORTON K. FLEISHMAN AND KATHRYN FLEISHMAN, PLAINTIFFS-APPELLANTS,
v.
RICHARDSON-MERRELL INC. AND WILLIAM S. MERRELL COMPANY, DELAWARE CORPORATIONS, DEFENDANTS, AND RALPH A. HALL, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 23, 1967.
Decided February 21, 1967.
*91 Before Judges SULLIVAN, KOLOVSKY and CARTON.
Mr. H. Frank Pettit argued the cause for appellants.
Mr. John I. Lisowski argued the cause for respondent (Messrs. Lamb, Blake, Hutchinson & Dunne, attorneys; Mr. H. Curtis Meanor, of counsel and on the brief).
The opinion of the court was delivered by CARTON, J.A.D.
Kathryn Fleishman contends that she suffered permanent injuries to her eyes as a result of the prolonged use of the drug Triparanol, commonly called MER/29, manufactured by the corporate defendants and prescribed by her physician, defendant Ralph A. Hall. On September 16, 1963, she and her husband filed a complaint against these defendants to recover for these alleged injuries. The defendant-doctor pleaded the two-year statute of limitations. Prior to trial, the trial court granted this defendant's motion to dismiss the action against him on the ground that it was barred by the statute. Plaintiff appeals.
*92 The record before us is extremely scanty. It includes the complaint, answers, order appealed from, portions of the pretrial order and excerpts from interrogatories and depositions. Both parties and the court treated the motion as one for summary judgment based upon the papers before the trial court and representations of plaintiffs' counsel as to plaintiffs' factual and legal contentions.
Plaintiffs' claim against the defendant doctor is set forth in the pretrial memorandum which was incorporated as a part of the pretrial order:
"The plaintiffs contend that the corporate defendants knew and the defendant doctor should have known that the side effects could be encountered. The company actually withdrew the drug from the market, notifying the doctors of its withdrawal because of the dangerous side effects. However, the defendant doctor did nothing to terminate the plaintiff's treatment and the cataracts subsequently developed."
This plaintiff claims that she saw the defendant doctor on July 15, 1960; that he diagnosed her condition as one of abnormally high cholesterol level and on that date gave her a prescription for MER/29. According to her deposition, she spoke to Doctor Hall again only once after the time he gave her the prescription. This occurred the following week when he checked up on her condition and took a blood test. She was then taking the drug according to the prescription, but did not know it was MER/29. She first learned the prescription called for was MER/29 when she telephoned the doctor's nurse and obtained the commercial name of the drug from her. She did not tell the nurse to inform the doctor what she called about and did not tell the doctor herself that she was buying the drug under its trade name. Nor did she tell her that she intended to continue taking the drug.
The prescription itself authorized only two refills after it ran out. However, plaintiff continued to take the MER/29 capsules which her husband had purchased under their trade name at various drug stores. The defendant did not treat or *93 see her at any time between July 1960 and December 1961; nor was he consulted about her continuing to take the drug or notified by her of the effects she claimed were due to it. She immediately stopped taking the drug when her son heard a radio program in December 1961 in which there was a discussion about the reported side effects of MER/29.
The corporate defendants stated, in answers to interrogatories from plaintiffs, that the first announcement to the medical profession that MER/29 might cause eye cataract growth was made on December 1, 1961.
The theory of plaintiffs' claim is that a physician has a continuing duty to make periodic calls to follow the progress of the patient under his care and to notify the patient of the dangerous propensities of a drug which he has prescribed as soon as he knows or should have known of them. On this basis, plaintiff claims that defendant should have warned plaintiff on or about December 1, 1961, and that therefore the cause of action was not barred by the two-year statute.
Assuming the existence of such a continuing duty by a treating physician to a patient under his care, no such duty arose on the part of the defendant in the present case in view of the admitted facts. Such a duty can be owed only to one who actually remains under the physician's treatment and who follows the course of treatment prescribed. When does the treatment cease? The following quotation from Schmit v. Esser, 183 Minn. 354, 236 N.W. 622, 74 A.L.R. 1312 (Sup. Ct. 1931), is apposite:
"* * * So long as the relation of physician and patient continues as to the particular injury or malady which he is employed to cure, and the physician continues to attend and examine the patient in relation thereto, and there is something more to be done by the physician in order to effect a cure, it cannot be said that the treatment has ceased. That does not mean that there must be a formal discharge of the physician or any formal termination of his employment. If there is nothing more to be done by the physician as to the particular injury or malady which he was employed to treat, or if he ceases to attend the patient therefor, the treatment ordinarily ceases without any formality." (236 N.W., at 625, 74 A.L.R., at p. 1316)
*94 This defendant had the duty of following up the plaintiff's progress while she was consulting him and while she was taking the drug pursuant to his prescription. At the latest, this duty would have terminated shortly after her last visit to the defendant's office in July 1960.
She continued to take the drug after that time, not as a part of his treatment or under the defendant's prescription, but of her own volition and by her own procurement. He had no duty to continue to follow her progress after the prescription expired because she had left his treatment and he had no knowledge she was continuing to use the drug, or reason to know of it. It was conceded that she was not under defendant's supervision or care after July 1960. She herself dispensed with the physician's services and thus terminated the physician-patient relationship many months before December when it first became known that the prolonged use of the drug could have dangerous side effects. In no sense can it be said that this defendant abandoned the treatment of the plaintiff. See Clark v. Wichman, 72 N.J. Super. 486 (App. Div. 1962). Consequently, plaintiff's action against this defendant is barred by the statute. For an extended treatment of the liability of a physician for abandonment, see Annotation, 57 A.L.R.2d 432 (1958).
Moreover, the plaintiff would be precluded from recovery against this defendant for the additional reason that there is an absence of any causal relationship between her alleged injuries and the defendant's failure to notify her in December 1961 of the alleged dangerous properties of the drug. By her own admission, she herself became aware of the risk to which she had been exposed at about the same time she charges the defendant knew or should have known of it. She then discontinued use of the drug. Any injuries she may have sustained admittedly occurred prior to December 1961 and cannot be attributed to the failure to receive such notice from him.
We are satisfied that there was no genuine issue of material fact presented and that the statute had run on plaintiffs' *95 claim. The trial court properly granted the defendant's motion for dismissal of the complaint as to the defendant physician Hall.
Affirmed.