**N.K.K., an infant by her guardian and natural parent, Melanie R. KNUDSON, Appellants,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, Respondent.**

No. C9–96–741.

Court of Appeals of Minnesota.

Oct. 29, 1996.

Review Denied Dec. 23, 1996.

W. Scott Herzog, Paul G. Neimann, Charles E. Jones, Moss & Barnett, P.A., Minneapolis, for Appellant.

Donald F. Hunter, Anne T. Johnson, Gislason, Dosland, Hunter & Malecki, P.L.L.P., Minnetonka, for Respondent.

Considered and decided by DAVIES, P.J., and KLAPHAKE and PETERSON, JJ.

## OPINION

DAVIES, Judge.

Appellant, who suffered severe birth defects because her mother, during pregnancy, ingested prescribed medicine, challenges a declaratory judgment that a malpractice insurance policy does not cover the doctor's conduct, which occurred before March 19, 1984, the effective date of the policy. We affirm.

## FACTS

On March 2, 1984, appellant N.K.K.'s mother (mother) sought from Dr. Thomas Koehnen a pregnancy test and a prescription for Limbitrol, an anxiety-relief medication. The pregnancy test was negative. Dr. Koehnen wrote a 30–day prescription for Limbitrol, which is known to cause birth defects. The trial court found that Dr. Koehnen instructed mother not to fill the prescription until after another negative pregnancy test. Nonetheless, mother had the prescription filled immediately and began taking the drug the next day.

On March 9, mother took a second pregnancy test, which was positive. (There was conflicting testimony as to whether Dr. Koehnen again warned her not to take the prescription, and the trial court made no finding on that issue. In any event, she continued taking the Limbitrol.) Mother, now knowing she was pregnant, expressed a desire to switch to the care of Dr. Noel Collis, another doctor in Dr. Koehnen's clinic. Therefore, Dr. Koehnen instructed his lab technician to give the pregnancy test results to Dr. Collis. The trial court found that mother's care was transferred from Dr. Koehnen to Dr. Collis on March 13 and after that date her "care and treatment was provided in its entirety by Dr. Collis." In other words, the trial court found that her treatment with Dr. Koehnen had ceased that day. Dr. Koehnen's malpractice insurance policy

became effective on March 19. Mother did not stop taking the Limbitrol until March 26, when she saw Dr. Collis pursuant to an appointment made earlier.

On April 5, mother was admitted to the hospital with abdominal pain. She claims that Dr. Koehnen "interpreted" an ultrasound test there, but hospital records indicate, and the trial court found, that he did not examine her or give her any medical advice. Mother continued her prenatal care with Dr. Collis until October 1984, when appellant was born with serious birth defects.

Appellant, by mother, sued Dr. Koehnen in 1985 for negligently prescribing Limbitrol. Dr. Koehnen gave notice of the claim to his malpractice insurance company, respondent St. Paul Fire and Marine Insurance Co. (St. Paul). St. Paul denied coverage based on the following policy provision:

**When you're covered**

To be covered the professional service must have been performed (or should have been performed) after your retroactive date that applies. The claim must also first be made while the agreement is in effect.

St. Paul reasoned that any negligence claim arising from the March 2 prescription was outside the coverage period because Dr. Koehnen's policy listed March 19, 1984, as its retroactive date. Because negligence must occur after the retroactive date to be included in covered claims, St. Paul asserted that Dr. Koehnen had not provided any professional services to mother within the policy period. (There is no dispute that the claim was made during the policy period.)

In December 1992, appellant reached a *Miller v. Shugart* settlement with Dr. Koehnen, pursuant to which he stipulated to the entry of judgment against him in the amount of $1,000,000 (his policy limit) on condition that the judgment be collectible only from the proceeds of his St. Paul policy.

Appellant, by mother, then brought this declaratory judgment action against St. Paul, seeking a ruling that the policy covered Dr. Koehnen's negligence and that the amount of damages agreed to in the *Miller v. Shugart* settlement was reasonable. After a bench

trial, the court ruled that the policy did not provide coverage. Appellant challenges that order. The court did not reach the question whether the settlement amount was reasonable.

## ISSUES

I. Were Dr. Koehnen's professional services provided to or withheld from mother after the retroactive date of his policy?

II. Is this "claims-made" policy ambiguous (thereby requiring construction in favor of coverage) because it does not provide retroactive coverage, a common feature of "claims-made" policies?

III. Does the doctrine of reasonable expectations apply because a reasonable insured would expect to be covered on a negligent prescription written before the policy period but extending into it?

IV. Does the St. Paul policy violate public policy?

## ANALYSIS

■■■ Under a *Miller v. Shugart* settlement, the only issues before the lower court are: (1) whether there is coverage under the policy; and (2) whether the settlement amount is reasonable.[1] *Alton M. Johnson Co. v. M.A.I. Co.*, 463 N.W.2d 277, 278 n. 1 (Minn.1990). On established facts, "[i]nsurance coverage issues are questions of law for the court." *State Farm Ins. Cos. v. Seefeld*, 481 N.W.2d 62, 64 (Minn.1992).

### I. Treatment After Retroactive Date

■ What date mother terminated her treatment with Dr. Koehnen is a question of fact. *Krause v. Farber*, 379 N.W.2d 93, 96 (Minn.App.1985), *review denied* (Minn. Feb. 14, 1986). We may not reverse a finding of fact unless clearly erroneous, and decisions about the credibility of witnesses are left to the fact-finder. Minn. R. Civ. P. 52.01.

■ Three factors are to be considered when determining whether treatment has ceased:

(1) whether there is a relationship between physician and patient with regard to the illness; (2) whether the physician is attending and examining the patient; and (3) whether there is something more to be done.

*Krause*, 379 N.W.2d at 96 (citations omitted).

■ Here, the record amply supports a finding that appellant, in attempting to show treatment on March 19 or later, did not meet prongs one and two. (The trial court did not phrase its findings in terms of the above test, but its statements that mother had transferred her care entirely to Dr. Collis after March 13 and was no longer being treated by Dr. Koehnen are equivalent in their effect.) Mother herself testified that, as of March 13, she had decided to transfer her care. She did not, after that date, see Dr. Koehnen in his office. Dr. Koehnen and his lab technician testified that they arranged to have the March 9 pregnancy test results given to Dr. Collis. Mother's claim that Dr. Koehnen interpreted a medical test for her when she was in the hospital in April—rejected by the trial court—was contradicted by other evidence, including inconsistencies in her own testimony and the lack of any record of such treatment. The trial court was within its discretion in making its credibility determinations and in concluding that as of March 13, 1984—before the policy period began—mother was no longer in Dr. Koehnen's care.

Appellant argues that because mother's 30-day prescription continued into Dr. Koehnen's policy period, he was, as a matter of law, providing professional services to her during the policy period. We are unpersuaded by the cases cited by appellant to support this argument.

For example, in *Fleishman v. Richardson–Merrell, Inc.*, 94 N.J.Super. 90, 226 A.2d 843, 845 (1967), the court held that there was no continuing treatment where medicine had been prescribed negligently and the patient allegedly continued to refill the prescription on her own. Appellant, though, quotes the court as holding that the doctor

1. Whether the settlement amount is reasonable is not before us in this appeal as the trial court did not rule on it.

had the duty of following up the plaintiff's progress while she was consulting him and while she was taking the drug pursuant to his prescription.

*Id.* Appellant fails to note that "and" is the conjunction and that the court later specifically stated that "[s]uch a duty can be owed only to one who actually remains under the physician's treatment and who follows the course of treatment prescribed." *Id.* Implicitly, then, the court indicated that the legal duty of care that attaches with the writing of a prescription continues only while consultation continues, a factual issue separate from the duration of the prescription. Here, not only did the trial court find that mother's treatment with Dr. Koehnen ceased as of March 13, but it also plainly found that Dr. Koehnen instructed her not to take the medication unless and until she received a second negative pregnancy test.

*Fleishman* was quoted extensively—and relied on—by our own supreme court in *Johnson v. Winthrop Lab. Div. of Sterling Drug, Inc.*, 291 Minn. 145, 152–53, 190 N.W.2d 77, 82 (1971). The supreme court concluded that, where a patient purchased medication on her own after treatment ceased and the prescription expired, the doctor had no continuing duty towards her. We disagree with appellant's argument that *Johnson* implies that a continuing duty exists during the period the medication was to have been taken, even absent a continuing treatment relationship.

In sum, we hold that the 30–day prescription here is insufficient to establish that mother was treated by Dr. Koehnen to the end of the prescription period. We affirm the trial court's conclusion that the doctor did not provide professional services beyond March 13, 1984, and thus that the St. Paul policy by its terms does not provide coverage.

## II. Ambiguity

Appellant claims the St. Paul policy is ambiguous because: (1) it is a "hybrid" of both a "claims-made" policy and an "occurrence" policy; and (2) it fails to address coverage

where there is negligence to an unborn child. She argues that the ambiguities should be resolved in favor of coverage.

### A. "Hybrid"

■ A "claims-made" policy requires that, for coverage to attach, the insurer must be given notice of the claim during the policy period. Under an "occurrence" policy, by contrast, for coverage to attach the negligent *act* must occur during the policy period. Appellant views the St. Paul policy here as a "hybrid" of the two because it requires that both the negligence and the claim occur during the policy period. Appellant goes on to argue that, in the absence of any retroactive coverage, the policy should be construed as an "occurrence" policy.

■ We are unpersuaded by this analysis. St. Paul policy's identical effective and retroactive dates are standard for an initial claims-made policy. Renewals, however, usually retain as their "retroactive date" the first day of the original policy period of consecutive policies; renewals therefore actually provide retroactive coverage.[2] Although there is no Minnesota case law directly on point, the Michigan Supreme Court has stated that "[s]imply because the [policy] is a 'hybrid' does not mean that its meaning is unclear or ambiguous." *Stine v. Continental Casualty Co.*, 419 Mich. 89, 349 N.W.2d 127, 137–38 (1984).

"Parties to insurance contracts * * * are free to contract as they see fit," and the insurer's liability is governed by the contract. *Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). We hold that the contract here is unambiguous and provides no coverage for occurrences before the first day of the first policy period.

### B. Application to Unborn Child

Appellant argues that, because the policy does not expressly address its application to an unborn child, it is ambiguous on that point and should be construed in favor of coverage.

---

2. This renewal retroactivity explains the unfortunate reality that claims-made insureds cannot change insurers except at significant risk.

No case law is cited to support this argument other than those establishing a physician's general duty towards an unborn child; we find no merit in the argument.

### III. Reasonable Expectations of Insured

■ The doctrine of reasonable expectations provides that the reasonable expectations of an insured regarding coverage will be honored, even though a careful study of the contract provisions would have negated those expectations. *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.*, 366 N.W.2d 271, 277 (Minn.1985). The aim of the doctrine is to disallow "obscure conditions or exclusions." *Id.* at 277–78.

Appellant argues that "the requirement that the negligent act had to occur after the retroactive date, together with the failure to provide a retroactive date that was truly 'retroactive,'" results in a "hidden or obscure exclusion" that should not be enforced. We disagree.

Appellant relies primarily on *Sparks v. St. Paul Ins. Co.*, 100 N.J. 325, 495 A.2d 406 (1985), which held that a policy similar to the one at issue here frustrated the insured's reasonable expectations because of the lack of retroactive coverage. That position, however, represents a minority view. *See Truck Ins. Exch. v. Ashland Oil, Inc.*, 951 F.2d 787, 791 (7th Cir.1992) (*Sparks'* invalidation of policy "very much a minority view"); *General Ins. Co. v. McManus*, 272 Ill.App.3d 510, 209 Ill.Dec. 107, 111, 650 N.E.2d 1080, 1084 (1995) (same). Further, the *Sparks* court itself recognized that a "claims-made" policy with no retroactive period of coverage could be valid where the insured understood and bargained for the specific terms of the policy. *Sparks*, 495 A.2d at 415 n. 4.

■ As discussed above, there is no obscurity in this policy. Indeed, Dr. Koehnen himself testified he understood that the policy did not cover any professional acts that took place before March 19, 1984—in other words, he understood he was uninsured before that date. In view of these facts, we cannot conclude that Dr. Koehnen reasonably expected coverage for pre-policy negligence. Appellant, who stands in Dr. Koehnen's shoes as a result of the *Miller v. Shugart* settlement, cannot successfully argue differently.

### IV. Public Policy

■ Appellant argues that the St. Paul policy is against public policy for reasons similar to those she relies on to assert the reasonable expectations doctrine. We disagree. This is a standard policy, approved by the Commissioner of Insurance of Minnesota. Its coverage is unambiguous, and its "hybrid" structure is understandable, given Dr. Koehnen's lack of any insurance before obtaining it. We hold that it does not violate public policy and is enforceable as written.

### DECISION

The trial court properly concluded that the St. Paul policy does not provide coverage for the prescription Dr. Koehnen wrote for appellant's mother.

**Affirmed.**