# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1845

_____

| | | |
|---|---|---|
| Winthrop and Weinstine, P.A. | * | |
| | * | |
| | * | |
| Plaintiff - Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of Minnesota. |
| | * | |
| Travelers Casualty and Surety | * | |
| Company; United States Fidelity & | * | |
| Guaranty Company, | * | |
| | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: February 11, 1999
Filed: August 19, 1999

_____

Before McMILLIAN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

JOHN R.GIBSON, Circuit Judge.

Winthrop and Weinstine, P.A., a law firm, appeals from the district court's[1] order granting summary judgment to United States Fidelity and Guaranty Company and

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

Travelers Casualty and Surety Company, and denying it insurance coverage for losses resulting from an employee's embezzlement. Winthrop argues that the court erred in granting summary judgment to USF&G and Travelers because: (1) USF&G was not prejudiced by late notice of loss; (2) there is coverage under the prior insurance clause of the Travelers policy; and (3) Travelers is estopped from denying coverage. We affirm the district court's order.

From February 1, 1990, through January 31, 1994, USF&G insured Winthrop for loss caused by employee dishonesty. The policy covered loss sustained during its policy period and "discovered no later than one year from the end of the policy period." The declarations showed three policy periods for the USF&G policies: February 1, 1990 to February 1, 1991; February 1, 1991 to February 1, 1992; and February 1, 1992 to February 1, 1994. The policy required Winthrop to provide notice of a loss "as soon as possible."

On February 1, 1994, the USF&G policy expired. Winthrop obtained an almost identical policy from Aetna Casualty & Surety Company.[2] The policy provided coverage for certain losses sustained during prior insurance:

> a. If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance provided:
>
> > (1) This insurance became effective at the time of cancellation or termination of the prior insurance: and

---

[2]Effective July 1, 1997, Aetna Casualty and Surety became known as Travelers Casualty and Surety Company. For simplicity, we will identify Aetna as Travelers and the policy at issue as the Travelers policy.

(2) The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

b. The insurance under this Condition is part of, not in addition to, the Limits of Insurance applying to this insurance and is limited to the lesser of the amount recoverable under:

(1) This insurance as of its effective date; or
(2) The prior insurance had it remained in effect.

In July 1989, Winthrop hired Therese Warner to work as an accounts payable clerk. She was fired on July 5, 1994. On September 28, 1994, Winthrop discovered that Warner had stolen money during her last month of employment. Warner had altered the "payee" on checks payable to Winthrop creditors to her personal credit card accounts. Winthrop immediately notified Mark Epstein, its insurance agent, who, in turn, notified Travelers of a potential claim. No notice was provided to USF&G.

On November 23, 1994, Winthrop submitted a proof of loss to Travelers. The proof of loss documented that between September 1993 and June 1994, Warner altered the payee on twenty-three Winthrop checks. The total amount stolen was $47,830.54. Although six of the twenty-three checks (totaling $12,042.70) included in the proof of loss were stolen when Winthrop was insured by USF&G, Travelers paid Winthrop $47,330.54 (proof of loss minus $500 deductible) in "full settlement" of the proof of loss. Winthrop accepted the check and executed a "Release and Assignment." Winthrop released Travelers "on account of a certain loss arising out of employee theft by Therese Warner" and assigned Travelers all "of its claims and rights" against Warner "growing out of" the loss. Travelers also obtained a $47,330.54 promissory note from Warner.

Soon thereafter, on January 3, 1995, Winthrop discovered that Warner had stolen additional checks. The next day, Winthrop provided notice to Travelers of the

additional stolen checks. On April 5, Winthrop submitted a second proof of loss to Travelers, documenting that between July 31, 1993, and May 23, 1994, Warner had stolen thirty-three Winthrop checks totaling $82,994.98. Although nineteen of the thirty-three checks set forth in the second proof of loss (totaling $52,651.57) were stolen when Winthrop was insured under the USF&G policy, Travelers approved the second proof of loss for payment.

Before Travelers paid on the second proof of loss, Winthrop discovered additional losses. On June 22, 1995, Winthrop learned that Warner had stolen more checks, and that her scheme had been taking place for at least three years. Again, Winthrop notified Travelers, but not USF&G, of its additional losses. Winthrop then hired an accounting firm to determine the full extent of its losses. The accounting firm completed its investigation on September 28, 1995, concluding that Warner stole an additional 153 checks dating from as early as 1990, totaling $215,783.01.

On October 18, 1995, for the first time, Winthrop notified USF&G of a potential claim. About a month later, Winthrop submitted a third proof of loss to Travelers, as well as proof of loss to USF&G. Winthrop believed that USF&G was responsible for occurrences before February 1, 1994, and that Travelers was responsible for occurrences after February 1, 1994.

Travelers replied that it would provide coverage for losses sustained on or after February 1, 1994, the effective date of the Travelers policy. Travelers acknowledged coverage for $74,267.90. Travelers offered to pay $26,437.39, calculating that it had already paid $47,330.51, of which $12,042.70 was mistakenly paid for losses sustained prior to February 1, 1994. Travelers denied that the prior insurance clause of its policy covered checks altered during USF&G's policy period on the ground that the one-year

-4-

discovery window under the USF&G policy[3] had not expired when Winthrop discovered Warner's dishonesty.

USF&G also denied coverage. USF&G asserted that there was no coverage because Winthrop did not timely notify it of the loss.

Winthrop filed suit against both insurers. The parties stipulated to certain facts, and the insurers moved for summary judgment. The district court ruled that Travelers was required to indemnify Winthrop only for the loss occurring during its policy, and that USF&G had no obligation to provide coverage because of Winthrop's late notice. Winthrop now appeals the grant of summary judgment.

## I.

We review a grant of summary judgment de novo, viewing all evidence in a light most favorable to the nonmoving party. See Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). "A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. The parties direct us to Minnesota law in this diversity case.

Winthrop first argues that the district court erred in ruling that USF&G was not required to indemnify it for any loss which occurred before February 1, 1994, because of Winthrop's late notice. Winthrop admits that the thirteen-month delay between Winthrop's initial discovery of the loss and notice to USF&G constituted late notice. Nevertheless, Winthrop contends that USF&G was not prejudiced by the late notice and must therefore provide coverage.

---

[3]The prior insurance clause applied only if the insured "could have recovered under [the prior insurance] except that the time within which to discover loss had expired . . . ."

In Minnesota, late notice by the insured does not necessarily result in a loss of coverage. Late notice defeats coverage only if there is prejudice to the insurer or notice is actually a condition precedent to coverage (i.e. the policy is a "claims made" policy). See Reliance Ins. Co. v. St. Paul. Ins. Cos., 239 N.W.2d 922, 924-25 (Minn. 1976) (prejudice required); N.K.K. ex rel. Knudson v. St. Paul Fire and Marine Ins. Co., 555 N.W.2d 21, 25 (Minn. Ct. App. 1996) ("claims made" policy); Esmailzadeh v. Johnson and Speakman, 869 F.2d 422, 424-25 (8th Cir. 1989) (same). The insurer has the burden of proving prejudice. See Reliance, 239 N.W.2d at 925.

The district court held that notice was not a condition precedent to coverage. The court ruled, however, that USF&G was prejudiced in two ways by the late notice. First, USF&G was prejudiced because it could not recover from Winthrop's financial institutions who paid on the altered checks. Second, USF&G was prejudiced when Winthrop signed a release and assignment of all claims and Travelers obtained a promissory note from Warner.

Section 336.4-406(f) of Minnesota's Commercial Code precludes a bank customer from recovering on an altered check from its bank if the customer does not report the alteration within one year of the bank statement being made available to the customer. See Minn Stat. § 336.4-406(f) (1998). Because USF&G did not receive notice of Winthrop's loss until October 1995, it could not become Winthrop's subrogee until that time. By October 1995, the one year limitation period expired on checks appearing on bank statements after September 1993 but before October 1994.[4] The late notice to USF&G resulted in USF&G losing the opportunity to timely notify the banks on these checks.[5]

---

[4]Winthrop estimates that these checks totaled $67, 210.76.

[5]Winthrop argues that USF&G would not have won on the merits against the banks even if the limitations period had not expired; therefore, USF&G was not prejudiced. We reject Winthrop's argument. Winthrop speculates on the merits, while

Furthermore, before Winthrop gave notice to USF&G, Winthrop had already released Travelers and assigned to it "all of its claims and rights against Therese Warner . . . growing out of the [employment theft] . . . ." Because USF&G did not receive notice "as soon as possible," as the policy required, it lost the opportunity to engage in the initial settlement negotiations and to prevent Winthrop from using the broad language in the assignment to Travelers, or at least, to receive an assignment of "all claims" before Travelers did. USF&G contends the assignment was detrimental because if USF&G were to sue Warner, Warner could defend by asserting that USF&G had no rights against her because Winthrop had assigned all such claims and rights to Travelers. Winthrop contends that such an argument would fail, or at least would only be successful as to items of loss actually paid by Travelers. The plain language of the assignment refers to "all claims and rights" growing out of the employment theft, and courts have interpreted such language in assignments and releases broadly. See, e.g., Sorensen v. Coast-to-Coast Stores Inc., 353 N.W.2d 666, 668-670 (Minn. Ct. App. 1984) (release of "all claims" applies to claims of which the party had no knowledge); Steele v. Goosen, 329 S.W.2d 703, 711-712 (Mo. 1959) (assignment of "all claims" to the insurer prevented insured from suing tortfeasor for amounts not paid by the insurer). Cf. J&B Slurry Seal Co. v. Mid-South Aviation, Inc., 362 S.E.2d 812, 819 (N.C. Ct. App. 1987) (by assignment insurer can acquire claim for greater value than the proceeds it has paid to the insured); 16 George J. Couch, Couch Cyclopedia of Insurance Law § 61:113 (2d ed. 1983) (same). Whether or not Warner's argument would succeed, USF&G is exposed to an issue that carries with it colorable potential for loss of its claim and the certainty of substantial litigation expense. This is, in our view, sufficient to establish prejudice. See West Bay Exploration Co. v. AIG Specialty Agencies, Inc., 915 F.2d 1030, 1036 (6th Cir. 1990) (applying Michigan law) (insurer does not have to prove that but for the delay in notice it would have avoided liability;

---

the expiration of the limitations period is an undisputedly dispositive defense. Its availability to the banks was prejudicial as a matter of law.

it need only show that it has suffered material impairment in its ability to contest the merits of a case); Robert E. Keeton and Alan I. Widiss, Insurance Law, § 7.2(e), at 766 (1988) (courts require insurers to prove "some, but not an overwhelming degree of, prejudice . . . . it is sufficient for the insurer to show . . . that the company's exposure to liability was increased . . . .).

The district court did not err in concluding that Winthrop's untimely notice was prejudicial to USF&G.

## II.

Winthrop next argues that Travelers is liable for coverage under the prior insurance clause of the policy. Travelers does not contest liability for losses occurring after February 1, 1994.

The prior insurance clause in the Travelers policy states:

[I]f you . . . sustained loss during the period of any prior insurance that you . . . could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance provided:

(1) This insurance became effective at the time of cancellation or termination of the prior insurance . . . .

The USF&G policy states, "We will pay only for covered loss discovered no later than one year from the end of the policy period."

The declarations show three insurance periods under the USF&G policy, and Winthrop contends that after period one (February 1, 1990 to February 1, 1991), it had a one year window to discover losses, and after periods two (February 1, 1991 to

February 1, 1992) and three (February 1, 1992 to February 1, 1994), it had like one year windows.  It argues that because it did not discover period one and period two losses until September 28, 1994 (outside the respective window for each period), Travelers is liable for those losses under the prior insurance clause.

We reject Winthrop's argument.  Reading the USF&G policy to create multiple discovery windows favors USF&G because USF&G would not be liable for period one and two losses, as those losses are outside the respective discovery windows.  Yet, USF&G does not assert this interpretation of the policy.  Instead, it argues that late notice was prejudicial.

Even if the USF&G policy contemplated multiple discovery windows, the district court held that the Travelers insurance did not "go into effect until after the third policy period"; therefore, the Travelers insurance did not become "effective at the time of cancellation or termination of the prior insurance," as the Travelers policy required.

The district court's holding views the expiration of USF&G policy periods one and two as terminations of prior insurance not immediately followed by Travelers coverage. Winthrop offers no analysis explaining why this is erroneous.  Instead, it conclusively states that Winthrop satisfied the condition regarding termination.  See Wilson v. International Business Machines Corp., 62 F.3d 237, 240 (8th Cir. 1995) (vague and conclusory arguments not properly before the court).   It argues that the district court "apparently" interpreted the "loss during the period of any prior insurance" language to mean only the "last" period.  However, the district court made no ruling, expressly or impliedly, to that effect.

Finally, Winthrop's reading of the prior insurance clause contradicts its own assertions regarding the purpose of the clause.  In its memorandum in opposition to summary judgment and again in its brief, Winthrop states that the purpose of prior insurance clauses is "to avoid penalizing an insured when switching insurance

companies."  If USF&G had issued a "period four" insurance policy, instead of Travelers, USF&G would not be liable for the period one and two losses because under Winthrop's analysis, the separate one year discovery windows for periods one and two had expired before discovery of loss.  Yet, Winthrop contends that Travelers (who issued the "period four" insurance) should be liable for period one and two losses.  Under Winthrop's analysis, the prior insurance provision does more than "avoid penalizing an insured when switching insurance companies."  By breaking the USF&G policy into periods for purposes of discovery windows, but considering the USF&G policy as a whole for determining whether the Travelers policy came into effect at the termination of prior insurance, Travelers seeks to reap a benefit for switching insurance companies.

The district court did not err in concluding that Travelers was not liable under the prior insurance provision.

## III.

Winthrop's equitable estoppel claim against Travelers is without merit.  Winthrop claims that Travelers is estopped from denying losses not covered by its policy because Travelers paid the first proof of loss and approved the second proof of loss, both of which took into account checks that were stolen when Winthrop was insured by USF&G.

"The doctrine of estoppel may not be used to enlarge the coverage of an insurance policy . . . . [I]t would be wholly improper to impose coverage liability upon an insurer for a risk not specifically undertaken and for which no consideration has been paid."  Shannon v. Great American Ins. Co., 276 N.W.2d 77, 78 (Minn. 1979); see also Pedersen v. United Services Auto. Ass'n, 383 N.W.2d 427, 430-31 (Minn. Ct. App. 1986) (insurer's mistaken acknowledgment of coverage and partial payment does not estop it from denying coverage).

Even if Winthrop could clear this hurdle, the evidence cited in its brief is insufficient as a matter of law to show equitable estoppel. It has not demonstrated sufficiently that Travelers intended that Winthrop act upon its representation or that Winthrop actually relied to its detriment (i.e., did not give notice to USF&G) because Travelers paid the first proof of loss and approved the second. See Transamerica Ins. Group v. Paul, 267 N.W.2d 180, 183 (Minn. 1978) (stating elements of equitable estoppel).

Affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.