*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1489**

Dominic Gemelli,
Appellant,

vs.

Lindsey Haugen, et al.,
Respondents,

Hartford Casualty Insurance Company,
Respondent.

**Filed May 26, 2015
Affirmed
Rodenberg, Judge**

Clay County District Court
File No. 14-CV-13-999

Gary M. Hazelton, Nathan T. Cariveau, Brooks M. Hazelton, Hazelton Law Firm, PLLC, Bemidji, Minnesota (for appellant)

Ronald H. McLean, Serkland Law Firm, Fargo, North Dakota (for respondents Lindsey Haugen, et al.)

Amy J. Woodworth, Erin Doran, Meagher & Geer, P.L.L.P., Minneapolis, Minnesota (for respondent Hartford Casualty Insurance Company)

        Considered and decided by Larkin, Presiding Judge; Rodenberg, Judge; and

Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**RODENBERG**, Judge

Appellant Dominic Gemelli challenges the district court's grant of summary judgment determining non-coverage under a professional liability insurance policy issued by respondent Hartford Casualty Insurance Company to debtors Lindsey Haugen and Legal Professionals, Ltd. We affirm.

## FACTS

Attorney Lindsey Haugen and Legal Professionals, Ltd. (attorneys), represented appellant, Dominic Gemelli, on a criminal assault charge that was tried on April 29 through May 1, 2008. The jury convicted appellant, and he was thereafter sentenced to prison. Appellant directly appealed his conviction. On October 20, 2009, we held that the jury instructions given by the trial judge in appellant's criminal case were plainly erroneous. We reversed the conviction and remanded the case to the district court. *See State v. Gemelli*, No. A08-1605 (Minn. App. Oct. 20, 2009). On remand, appellant was retried and acquitted on November 4, 2010, after having spent 17 months incarcerated as a result of the earlier conviction.

Respondent Hartford Casualty Insurance Co. (Hartford) issued a professional liability policy to attorneys for a one-year period beginning on December 5, 2009, with a retroactive coverage date of December 5, 2008.

In November 2011, appellant sued attorneys alleging legal malpractice and vicarious liability. The complaint alleged damages occurring "[a]s a direct result of [attorneys'] malpractice," and alleged a series of acts and omissions by attorneys

including failures to object, failures to investigate, and a failure to preserve evidence, among other failures. Attorneys notified Hartford of appellant's claim. Hartford informed attorneys that it would provide neither indemnity nor defense for the legal malpractice claim because the errors alleged in the complaint occurred before the policy's retroactive date of December 5, 2008.

In September 2012, appellant and attorneys settled appellant's legal malpractice lawsuit by way of a *Miller-Shugart* agreement.[1] The settlement agreement provided that appellant would be entitled to a $400,000 judgment against attorneys, recoverable from the Hartford policy. In an effort to collect on the judgment, appellant served Hartford with a garnishment summons and later a supplemental complaint, alleging that Hartford was legally obligated to indemnify attorneys. Hartford appeared and denied coverage under the policy. The district court found that the plain language of the insurance policy did not provide coverage for appellant's malpractice claim against attorneys, and the court granted summary judgment in favor of Hartford. This appeal followed.

## D E C I S I O N

Appellant challenges the district court's conclusion that because there was no act, error or omission on the part of attorneys that occurred during the policy period, the

---

[1] When an insured has been denied coverage for a claim and the insurer declines to provide a defense, the insured may settle a lawsuit for a stipulated sum by stipulating to a judgment recoverable only from the insurer. *See Miller v. Shugart,* 316 N.W.2d 729, 735 (Minn. 1982). The unique feature of such an agreement is that, while there is a judgment entered against the insured, it can *only* be recovered from the insured's policy and the settling plaintiff assumes the risk of non-coverage. The settling plaintiff must establish coverage to obtain any recovery. *See Jorgensen v. Knutson*, 662 N.W.2d 893, 904 (Minn. 2003).

3

policy did not provide coverage for appellant's claim. On appeal from summary judgment, "we must review the record to determine whether there is any genuine issue of material fact and whether the district court erred in its application of the law." *Dahlin v. Kroening*, 796 N.W.2d 503, 504 (Minn. 2011). "Interpretation of an insurance policy and application of the policy to the facts in a case are questions of law that [are reviewed] de novo." *Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 609 (Minn. 2001).

The policy provision at issue here provides:

> [T]he [Hartford] shall pay on behalf of the "insured" all sums in excess of the deductible which the "insured" shall become legally obligated to pay as "damages" **by reason of any act, error, or omission, including "claims" arising out of "personal injury[,"]** committed or alleged to have been committed prior to the end of the "policy period" and subsequent to the "retroactive date[,"] provided always that:
>
> 1. The "insured's" liability arises out of the "insured" performing or failing to perform "professional services" for others;
>
> 2. Such "damages" result from a "claim" that is first made against the "insured" during the "policy period" and is reported in writing to the [Hartford] immediately but in no event later than sixty (60) days after the expiration of the "policy period";
>
> 3. With respect to an act, error, omission, or "personal injury" committed or alleged to have been committed prior to the "policy period[,"] no other valid and collectible insurance is available; and
>
> 4. As of the effective date of this Coverage Form, no "insured" knew or could have foreseen that such act, error, omission, or "personal injury" could result in a "claim[."]

(Emphasis added.)

4

The policy defines "personal injury" to mean:

a.  False arrest, detention, or imprisonment;

b.  Malicious prosecution or abuse of process;

c.  The wrongful eviction from, wrongful entry into or other invasion of the right of private occupancy; or

d.  The publication or utterance of a libel or slander or other defamatory or disparaging material or a publication or utterance in violation of an individual's right of privacy.

Where the language of a policy is clear and unambiguous, we must adopt the policy's plain and ordinary meaning. *Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 652 (Minn. 1986). Language in a policy is ambiguous "if it is susceptible to two or more reasonable interpretations." *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co, Inc.*, 825 N.W.2d 695, 705 (Minn. 2013) (quotation omitted). Ambiguous terms in an insurance policy are resolved against the insurer, but "a court should avoid reading an ambiguity into a contract in order to provide coverage if the plain language is clear." *Illinois Farmers Ins. Co. v. Coppa*, 494 N.W.2d 503, 506 (Minn. App. 1993).

The insuring provision here is unambiguous. The policy requires, as a precondition to coverage, that the insured must have committed an "act, error, or omission" after the retroactive date of December 5, 2008 and prior to the end of the policy period. Appellant's complaint alleges legal malpractice by attorneys in representing appellant at the criminal trial that ended on May 1, 2008. The *Miller-Shugart* agreement echoes the complaint and recites that attorneys are liable for a breach

of the applicable standard of care at the criminal trial. The criminal trial occurred months before the retroactive date of this policy. Appellant alleged no commission of any act, error or omission after December 5, 2008. Under the unambiguous terms of the policy, the district court properly found that appellant's coverage claim was properly denied.

Appellant argues that the policy is ambiguous, pointing to the policy language "including 'claims' arising out of 'personal injury.'" Appellant would have us find coverage under the policy because his incarceration amounted to a "personal injury," and because part of his incarceration was after the retroactive coverage date of the Hartford policy. But the malpractice that resulted in appellant's incarceration occurred before the policy period, and appellant made no allegation to the contrary. Because the policy language plainly requires an "act, error, or omission" during the policy period, the reference to "personal injury" identifies that claims such as false arrest, malicious prosecution and other arguably intentional torts are covered only if they arise from a covered act, error or omission.

Coverage under this policy is unambiguously triggered by acts, errors or omissions related to malpractice as well as the acts enumerated under the definition of "personal injury," any of which must take place after the policy's retroactive date.[2] The unambiguous language of the policy forecloses appellant's proposed interpretation of the

---

[2] This interpretation of the "personal injury" provision is consistent with our interpretation of a similar provision in *Hamlin v. Western Nat'l Mut. Ins. Co.*, 461 N.W.2d 395, 398 (Minn. App. 1990). In *Hamlin*, we stated that an insurance policy had a specific "personal injury" definition that listed affirmative acts to be covered by the policy and coverage was not extended beyond those acts enumerated in the definition. *Id.*

term "personal injury" as expanding the coverage period to include torts committed before the policy incepted when damages occur during the policy period.

For appellant to recover under the policy for a "personal injury" claim, he must have alleged in his complaint that the attorneys committed one of the acts listed as constituting a "personal injury" during the policy period. Attorneys would be covered for an act of false imprisonment, wrongful eviction, or slander occurring some time after December 5, 2008. Here, all of the claimed tortious acts and omissions, as alleged in appellant's complaint and in the *Miller-Shugart* agreement, involved only breach of the attorneys' standard of care during the trial ending in May 2008. Moreover, neither false imprisonment nor any of the acts that could constitute "personal injury" are alleged in the complaint. Appellant's claims were only of malpractice occurring before the policy period. Since all of the complained-of "acts, errors, or omissions" of attorneys were before the retroactive date of December 5, 2008, this policy does not provide coverage.

Appellant also urges us to apply caselaw concerning occurrence policies in our interpretation of the Hartford policy. He argues that the presence of a retroactive date in the Hartford policy renders it a hybrid of a claims-made and an occurrence policy. The Hartford policy in effect at the time appellant sued attorneys had a coverage period from December 5, 2009 to December 5, 2010 with a retroactive date of December 5, 2008. Identical effective and retroactive dates are common for an initial claims-made policy. *N.K.K. by Knudson v. St. Paul Fire & Marine Ins. Co.*, 555 N.W.2d 21, 25 (Minn. App. 1996), *review denied* (Minn. Dec. 23, 1996). Because renewal policies generally retain the retroactive date of the initial policy, they are claims-made policies. *Id.* Therefore, the

7

Hartford policy is properly characterized as a claims-made policy. Appellant's reliance on occurrence policy caselaw is misplaced.

Appellant's claims against attorneys rest entirely on "acts, errors, or omissions" alleged against attorneys before the retroactive coverage date of Hartford's policy insuring attorneys. As such, the claims do not fall within the policy's insuring provisions which plainly require an "act, error, or omission" to occur within the coverage period. The district court properly granted summary judgment in favor of Hartford.

**Affirmed.**